MICHAEL FAILLACE & ASSOCIATES, P.C.
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
ASCENCION CAZARES, BENJAMIN F.
DELACRUZ, FANNY JISSELLE LIZARDO
FABRE, GABINO ROMANO HERNANDEZ,
HERMENEJILDO ANGEL PRUDENTE,
IDOR JEAN LUCKNER, JOSE CEDANO,
JOSE G. REYES, LUIS ALBERTO SALAS
UMANA, WENDY PATRICIA DAMAS,
POCO J. OUEDRAOGO, and SUSANA E.
ROBLES MARTINEZ, *individually and on
behalf of others similarly situated,*

                                *Plaintiffs,*

           -against-

2898 BAGEL & BAKERY CORP.  (D/B/A
NUSSBAUM & WU), SHOLOMO
NUSSBAUM, and NATALIE DOE,

                            *Defendants.*

-------------------------------------------------------X

                **COMPLAINT**

      **COLLECTIVE ACTION UNDER**
           **29 U.S.C. § 216(b)**

               **ECF Case**

      Plaintiffs Ascencion Cazares, Benjamin F. Delacruz, Fanny Jisselle Lizardo Fabre, Gabino

Romano Hernandez, Hermenejildo Angel Prudente, Idor Jean Luckner, Jose Cedano, Jose G.

Reyes, Luis Alberto Salas Umana, Wendy Patricia Damas, Poco J. Ouedraogo, and Susana E.

Robles Martinez, individually and on behalf of others similarly situated (collectively, "Plaintiffs"),

by and through their attorneys, Michael Faillace & Associates, P.C., upon their knowledge and

belief, and as against 2898 Bagel & Bakery Corp. (d/b/a Nussbaum & Wu), ("Defendant

Corporation"), Sholomo Nussbaum and Natalie Doe, ("Individual Defendants"), (collectively, "Defendants"), allege as follows:

## NATURE OF ACTION

1.      Plaintiffs are former employees of Defendants 2898 Bagel & Bakery Corp. (d/b/a Nussbaum & Wu), Sholomo Nussbaum, and Natalie Doe.

2.      Defendants owned, operated, or controlled a bagel shop, located at 2897 Broadway, New York, New York 10025 under the name "Nussbaum & Wu".

3.      Upon information and belief, individual Defendants Sholomo Nussbaum and Natalie Doe, serve or served as owners, managers, principals, or agents of Defendant Corporation and, through this corporate entity, operate or operated the bagel shop as a joint or unified enterprise.

4.      Plaintiffs were employed as sandwich makers, smoothie makers, delivery workers, cooks, cook assistants, and cashiers at the bagel shop located at 2897 Broadway, New York, New York 10025.

5.      Plaintiffs Romano, Luckner, Salas, and Ouedraogo were ostensibly employed as delivery workers. However, they were required to spend a considerable part of their work day performing non-tipped duties, including but not limited to making bagels, dishwashing, cleaning, sweeping and mopping, and arranging and stocking merchandise (hereafter the "non-tipped duties").

6.      At all times relevant to this Complaint, Plaintiffs worked for Defendants in excess of 40 hours per week, without appropriate minimum wage, overtime, and spread of hours compensation for the hours that they worked.

7.      Rather, Defendants failed to maintain accurate recordkeeping of the hours worked, failed to pay Plaintiffs appropriately for any hours worked, either at the straight rate of pay or for any additional overtime premium.

8.      Further, Defendants failed to pay Plaintiffs Cazares, Lizardo, and Cedano the required "spread of hours" pay for any day in which they had to work over 10 hours a day.

9.      Furthermore, Defendants repeatedly failed to pay Plaintiffs wages on a timely basis.

10.     Defendants employed and accounted for Plaintiffs Romano, Luckner, Salas, and Ouedraogo as delivery workers in their payroll, but in actuality their duties required a significant amount of time spent performing the non-tipped duties alleged above.

11.     Regardless, at all relevant times, Defendants paid Plaintiffs Romano, Luckner, Salas, and Ouedraogo at the tip-credit rate.

12.     However, under both the FLSA and NYLL, Defendants were not entitled to take a tip credit because these Plaintiffs' non-tipped duties exceeded 20% of each workday, or 2 hours per day, whichever is less in each day.  12 N.Y. C.R.R. §146.

13.     Upon information and belief, Defendants employed the policy and practice of disguising Plaintiffs Romano, Luckner, Salas, and Ouedraogo's actual duties in payroll records by designating them as delivery workers instead of non-tipped employees. This allowed Defendants to avoid paying Plaintiffs Romano, Luckner, Salas, and Ouedraogo at the minimum wage rate and enabled them to pay them at the lower tip credit rate.

14.     In addition, Defendants maintained a policy and practice of unlawfully appropriating Plaintiffs Romano, Luckner, Salas, and Ouedraogo's and other tipped employees' tips and made unlawful deductions from these Plaintiffs' and other tipped employees' wages.

15.     Defendants' conduct extended beyond Plaintiffs to all other similarly situated employees.

16.     At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs and other employees to work in excess of forty (40) hours per week without

providing the minimum wage and overtime compensation required by federal and state law and regulations.

17. Plaintiffs now bring this action on behalf of themselves, and other similarly situated individuals, for unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 *et seq.* and 650 *et seq.* (the "NYLL"), and the "spread of hours" and overtime wage orders of the New York Commissioner of Labor codified at N.Y. COMP. CODES R. & REGS. tit. 12, § 146-1.6 (herein the "Spread of Hours Wage Order"), including applicable liquidated damages, interest, attorneys' fees and costs.

18. Plaintiffs seek certification of this action as a collective action on behalf of themselves, individually, and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

19. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and the FLSA, and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a).

20. Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims occurred in this district, Defendants maintain their corporate headquarters and offices within this district, and Defendants operate a bagel shop located in this district. Further, Plaintiffs were employed by Defendants in this district.

## PARTIES

*Plaintiffs*

21.     Plaintiff Ascencion Cazares ("Plaintiff Cazares" or "Ms. Cazares") is an adult individual residing in Bronx County, New York.

22.     Plaintiff Cazares was employed by Defendants at Nussbaum & Wu from approximately October 2, 2003 until on or about June 17, 2018.

23.     Plaintiff Benjamin F. Delacruz ("Plaintiff Delacruz" or "Mr. Delacruz") is an adult individual residing in Bronx County, New York.

24.     Plaintiff Delacruz was employed by Defendants at Nussbaum & Wu from approximately October 12, 2013 until on or about March 31, 2018.

25.     Plaintiff Fanny Jisselle Lizardo Fabre ("Plaintiff Lizardo" or "Ms. Lizardo") is an adult individual residing in Bronx County, New York.

26.     Plaintiff Lizardo was employed by Defendants at Nussbaum & Wu from approximately May 2015 until on or about April 2016 and from approximately January 2017 until on or about June 16, 2018.

27.     Plaintiff Gabino Romano Hernandez ("Plaintiff Romano" or "Mr. Romano") is an adult individual residing in Queens County, New York.

28.     Plaintiff Romano was employed by Defendants at Nussbaum & Wu from approximately June 2012 until on or about June 17, 2018.

29.     Plaintiff Hermenejildo Angel Prudente ("Plaintiff Angel" or "Mr. Angel") is an adult individual residing in Bronx County, New York.

30.     Plaintiff Angel was employed by Defendants at Nussbaum & Wu from approximately April 2017 until on or about June 16, 2018.

31.     Plaintiff Idor Jean Luckner ("Plaintiff Luckner" or "Mr. Luckner") is an adult individual residing in Kings County, New York.

32.     Plaintiff Luckner was employed by Defendants at Nussbaum & Wu from approximately November 2015 until on or about June 17, 2018.

33.     Plaintiff Jose Cedano ("Plaintiff Cedano" or "Mr. Cedano") is an adult individual residing in New York County, New York.

34.     Plaintiff Cedano was employed by Defendants at Nussbaum & Wu from approximately April 23, 2011 until on or about June 17, 2018.

35.     Plaintiff Jose G. Reyes ("Plaintiff Reyes" or "Mr. Reyes") is an adult individual residing in Queens County, New York.

36.     Plaintiff Reyes was employed by Defendants at Nussbaum & Wu from approximately October 2015 until on or about June 17, 2018.

37.     Plaintiff Luis Alberto Salas Umana ("Plaintiff Salas" or "Mr. Salas") is an adult individual residing in New York County, New York.

38.     Plaintiff Salas was employed by Defendants at Nussbaum & Wu from approximately May 3, 2018 until on or about June 17, 2018.

39.     Plaintiff Wendy Patricia Damas ("Plaintiff Patricia" or "Ms. Patricia") is an adult individual residing in Queens County, New York.

40.     Plaintiff Patricia was employed by Defendants at Nussbaum & Wu from approximately January 2018 until on or about June 17, 2018.

41.     Plaintiff Poco J. Ouedraogo ("Plaintiff Ouedraogo" or "Mr. Ouedraogo") is an adult individual residing in Bronx County, New York.

42.     Plaintiff Ouedraogo was employed by Defendants at Nussbaum & Wu from approximately January 2017 until on or about June 18, 2018.

43.     Plaintiff Susana E. Robles Martinez ("Plaintiff Robles" or "Ms. Robles") is an adult individual residing in Bronx County, New York.

44.     Plaintiff Robles was employed by Defendants at Nussbaum & Wu from approximately August 20, 2013 until on or about February 2017 and from approximately August 2017 until on or about June 15, 2018.

*Defendants*

45.     At all relevant times, Defendants owned, operated, or controlled a bagel shop, located at 2897 Broadway, New York, New York 10025 under the name "Nussbaum & Wu".

46.     Upon information and belief, 2898 Bagel & Bakery Corp. (d/b/a Nussbaum & Wu) was a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 2897 Broadway, New York, New York 10025.

47.     Defendant Sholomo Nussbaum is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Sholomo Nussbaum is sued individually in his capacity as owner, officer and/or agent of Defendant Corporation. Defendant Sholomo Nussbaum possessed operational control over Defendant Corporation, an ownership interest in Defendant Corporation, and controlled significant functions of Defendant Corporation. He determined the wages and compensation of the employees of Defendants, including Plaintiffs, established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees.

48.     Defendant Natalie Doe is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Natalie Doe is sued individually in her capacity as owner, officer and/or agent of Defendant Corporation. Defendant Natalie Doe

possessed operational control over Defendant Corporation, an ownership interest in Defendant Corporation, and controlled significant functions of Defendant Corporation. She determined the wages and compensation of the employees of Defendants, including Plaintiffs, established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees.

## **FACTUAL ALLEGATIONS**

### *Defendants Constitute Joint Employers*

49.     Defendants operated a bagel shop located in the Morningside Heights section of Manhattan in New York City.

50.     Individual Defendants, Sholomo Nussbaum and Natalie Doe, possessed operational control over Defendant Corporation, possessed ownership interests in Defendant Corporation, and controlled significant functions of Defendant Corporation.

51.     Defendants are associated and joint employers, acted in the interest of each other with respect to employees, paid employees by the same method, and shared control over the employees.

52.     Each Defendant possessed substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

53.     Defendants jointly employed Plaintiffs (and all similarly situated employees) and are Plaintiffs' (and all similarly situated employees') employers within the meaning of 29 U.S.C. 201 *et seq*. and the NYLL.

54.     In the alternative, Defendants constitute a single employer of Plaintiffs and/or similarly situated individuals.

55.     Upon information and belief, Individual Defendants Sholomo Nussbaum and Natalie Doe operated Defendant Corporation as either an alter ego of  themselves and/or failed to operate Defendant Corporation as an entity legally separate and apart from themselves, by among other things:

a) failing to adhere to the corporate formalities necessary to operate Defendant Corporation as a Corporation,

b) defectively forming or maintaining the corporate entity of Defendant Corporation, by, amongst other things, failing to hold annual meetings or maintaining appropriate corporate records,

c) transferring assets and debts freely as between all Defendants,

d) operating Defendant Corporation for their own benefit as the sole or majority shareholders,

e) operating Defendant Corporation for their own benefit and maintaining control over this corporation as a closed Corporation,

f) intermingling assets and debts of their own with Defendant Corporation,

g) diminishing and/or transferring assets of Defendant Corporation to avoid full liability as necessary to protect their own interests, and

h) Other actions evincing a failure to adhere to the corporate form.

56.     At all relevant times, Defendants were Plaintiffs' employers within the meaning of the FLSA and New York Labor Law. Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for Plaintiffs' services.

57.     In each year from 2012 to 2018, Defendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

58.     In addition, upon information and belief, Defendants and/or their enterprise were directly engaged in interstate commerce. As an example, numerous items that were used in the bagel shop on a daily basis are goods produced outside of the State of New York.

*Individual Plaintiffs*

59.     Plaintiffs are former employees of Defendants who were employed as sandwich makers, smoothie makers, cooks, cook assistants and cashiers and ostensibly as delivery workers. However, the delivery workers spent over 20% of their work time performing the non-delivery, non-tip duties described above.

60.     Plaintiffs seek to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

*Plaintiff Ascencion Cazares*

61.     Plaintiff Cazares was employed by Defendants from approximately October 2, 2003 until on or about June 17, 2018.

62.     Defendants employed Plaintiff Cazares as a cook.

63.     Plaintiff Cazares regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

64.     Plaintiff Cazares's work duties required neither discretion nor independent judgment.

65.     Throughout her employment with Defendants, Plaintiff Cazares regularly worked in excess of 40 hours per week.

66.     From approximately June 2012 until on or about January 2015, Plaintiff Cazares worked from approximately 6:00 a.m. until on or about 5:00 p.m., Fridays through Wednesdays (typically 66 hours per week).

67.     From approximately February 2015 until on or about December 2017, Plaintiff Cazares worked from approximately 6:00 a.m. until on or about 3:00 p.m., Fridays through Wednesdays (typically 54 hours per week).

68.     From approximately January 2018 until on or about May 2, 2018, Plaintiff Cazares worked from approximately 5:30 a.m. until on or about 3:00 p.m., Fridays through Wednesdays (typically 57 hours per week).

69.     From approximately May 21, 2018 until on or about June 17, 2018, Plaintiff Cazares worked from approximately 5:30 a.m. until on or about 1:00 p.m., Mondays, Wednesdays, Fridays, and Saturdays and from approximately 5:30 a.m. until on or about 3:00 p.m., Tuesdays and Sundays (typically 53 hours per week).

70.     Throughout her entire employment, Defendants paid Plaintiff Cazares her wages in cash.

71.     From approximately June 2012 until on or about January 2015, Defendants paid Plaintiff Cazares a fixed salary of $300 per week.

72.     From approximately February 2015 until on or about December 2017, Defendants paid Plaintiff Cazares $8.75 per hour.

73.     From approximately January 2018 until on or about June 17, 2018, Defendants paid Plaintiff Cazares $13.00 per hour.

74.     For approximately one week in June 2018, Defendants did not pay Plaintiff Cazares any wages for her work.

75. Plaintiff Cazares's pay did not vary even when she was required to stay later or work a longer day than her usual schedule.

76. For example, Defendants required Plaintiff Cazares to work an additional 30 minutes past her scheduled departure time six days a week, and did not pay her for the additional time she worked.

77. Defendants never granted Plaintiff Cazares any breaks or meal periods of any kind.

78. In addition, in order to get paid, Plaintiff Cazares was required to sign a document in which Defendants misrepresented the hours that she worked per week.

79. No notification, either in the form of posted notices or other means, was ever given to Plaintiff Cazares regarding overtime and wages under the FLSA and NYLL.

80. Defendants did not provide Plaintiff Cazares an accurate statement of wages, as required by NYLL 195(3).

81. Defendants did not give any notice to Plaintiff Cazares, in English and in Spanish (Plaintiff Cazares's primary language), of her rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

82. Defendants required Plaintiff Cazares to purchase "tools of the trade" with her own funds—including shirts, pants, and hats.

*Plaintiff Benjamin F. Delacruz*

83. Plaintiff Delacruz was employed by Defendants from approximately October 12, 2013 until on or about March 31, 2018.

84. Defendants employed Plaintiff Delacruz as a line cook and a food preparer.

85. Plaintiff Delacruz regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

86.     Plaintiff Delacruz's work duties required neither discretion nor independent judgment.

87.     Throughout his employment with Defendants, Plaintiff Delacruz regularly worked in excess of 40 hours per week.

88.     From approximately October 12, 2013 until on or about December 2014 and from approximately April 2015 until on or about July 2017, Plaintiff Delacruz worked from approximately 11:00 a.m. until on or about 8:00 p.m., Fridays through Wednesdays (typically 54 hours per week).

89.     From approximately October 12, 2013 until on or about December 2014 and from approximately April 2015 until on or about July 2017, Defendants paid Plaintiff Delacruz his wages in cash.

90.     From approximately October 12, 2013 until on or about December 2014, Defendants paid Plaintiff Delacruz a fixed salary of $300 per week.

91.     From approximately April 2015 until on or about July 2017, Defendants paid Plaintiff Delacruz $9.00 per hour.

92.     Plaintiff Delacruz's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

93.     For example, Defendants required Plaintiff Delacruz to start working one to two hours prior to his scheduled start time every day, and did not pay him for the additional time he worked.

94.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Delacruz regarding overtime and wages under the FLSA and NYLL.

95.     Defendants did not provide Plaintiff Delacruz an accurate statement of wages, as required by NYLL 195(3).

96. Defendants did not give any notice to Plaintiff Delacruz, in English and in Spanish (Plaintiff Delacruz's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

97. Defendants required Plaintiff Delacruz to purchase "tools of the trade" with his own funds—including shirts and shoes.

*Plaintiff Fanny Jisselle Lizardo Fabre*

98. Plaintiff Lizardo was employed by Defendants from approximately May 2015 until on or about April 2016 and from approximately January 2017 until on or about June 16, 2018.

99. Defendants employed Plaintiff Lizardo as a cashier.

100. Plaintiff Lizardo regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

101. Plaintiff Lizardo's work duties required neither discretion nor independent judgment.

102. From approximately May 2015 until on or about April 2016, Plaintiff Lizardo worked over ten hours in one day.

103. From approximately May 2015 until on or about April 2016, Defendants paid Plaintiff Lizardo her wages in cash.

104. From approximately May 2015 until on or about April 2016, Defendants never paid Plaintiff Lizardo her spread of hours pay for working more than 10 hours one day a week.

105. For approximately one week in June 2018, Defendants did not pay Plaintiff Lizardo any wages for her work.

106. Defendants never granted Plaintiff Lizardo any breaks or meal periods of any kind.

107. Nevertheless, Defendants deducted 30 minutes every day from Plaintiff Lizardo's weekly paycheck for meals they never allowed her to take.

108.     Plaintiff Lizardo was not required to keep track of her time, nor to her knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected her actual hours worked.

109.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Lizardo regarding overtime and wages under the FLSA and NYLL.

110.     Defendants did not provide Plaintiff Lizardo an accurate statement of wages, as required by NYLL 195(3).

111.     Defendants did not give any notice to Plaintiff Lizardo, in English and in Spanish (Plaintiff Lizardo's primary language), of her rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Plaintiff Gabino Romano Hernandez*

112.     Plaintiff Romano was employed by Defendants from approximately June 2012 until on or about June 17, 2018.

113.     Defendants employed Plaintiff Romano as a bagel maker from approximately June 2012 until on or about December 2016 and ostensibly employed Plaintiff Romano as a delivery worker from approximately January 2017 until on or about June 17, 2018.

114.     However, Plaintiff Romano was also required to spend a significant portion of his work day performing the non-tipped duties described above.

115.     Although Plaintiff Romano ostensibly was employed as a delivery worker from approximately January 2017 until on or about June 17, 2018, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

116.     Plaintiff Romano regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

117.     Plaintiff Romano's work duties required neither discretion nor independent judgment.

118.     Throughout his employment with Defendants, Plaintiff Romano regularly worked in excess of 40 hours per week.

119.     From approximately June 2012 until on or about June 17, 2018, Plaintiff Romano worked from approximately 5:00 a.m. until on or about 2:00 p.m., six days a week (typically 54 hours per week).

120.     From approximately June 2012 until on or about December 2013, Defendants paid Plaintiff Romano his wages in cash.

121.     From approximately January 2014 until on or about November 2017, Defendants paid Plaintiff Romano his wages in a combination of check and cash.

122.     From approximately December 2017 until on or about June 17, 2018, Defendants paid Plaintiff Romano his wages by check.

123.     From approximately June 2012 until on or about May 2014, Defendants paid Plaintiff Romano a fixed salary of $500 per week.

124.     From approximately June 2014 until on or about June 2016, Defendants paid Plaintiff Romano a fixed salary of $560 per week.

125.     From approximately June 2016 until on or about June 2017, Defendants paid Plaintiff Romano a fixed salary of $600 per week.

126.     From approximately June 2017 until on or about December 2017, Defendants paid Plaintiff Romano a fixed salary of $640 per week.

127.     From approximately January 2018 until on or about June 17, 2018, Defendants paid Plaintiff Romano a fixed salary of $700 per week.

128.     Defendants never granted Plaintiff Romano any breaks or meal periods of any kind.

129.     Plaintiff Romano was never notified by Defendants that his tips were being included as an offset for wages.

130.     Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Romano's wages.

131.     Defendants withheld a portion of Plaintiff Romano's tips; specifically, Defendants pocketed a percentage of the tips he earned from customers.

132.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Romano regarding overtime and wages under the FLSA and NYLL.

133.     Defendants did not provide Plaintiff Romano an accurate statement of wages, as required by NYLL 195(3).

134.     Defendants did not give any notice to Plaintiff Romano, in English and in Spanish (Plaintiff Romano's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

135.     Defendants required Plaintiff Romano to purchase "tools of the trade" with his own funds—including three hats per year and five shirts every four months.

*Plaintiff Hermenejildo Angel Prudente*

136.     Plaintiff Angel was employed by Defendants from approximately April 2017 until on or about June 16, 2018.

137.     Defendants employed Plaintiff Angel as a sandwich maker.

138.     Plaintiff Angel regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

139.     Plaintiff Angel's work duties required neither discretion nor independent judgment.

140.     On at least three weeks in 2018, Plaintiff Angel worked in excess of 40 hours per week.

141.     From approximately April 2017 until on or about June 16, 2018, Plaintiff Angel worked from approximately 6:00 a.m. until on or about 12:30 p.m., six days a week (typically 39 hours per week).

142.     However, on at least three weeks in 2018, Plaintiff Angel worked in excess of 40 hours per week.

143.     Specifically, in the year 2018, Plaintiff Angel worked from approximately 6:00 a.m. until on or about 1:00 p.m. seven days a week on three occasions (typically 49 hours per week).

144.     Throughout his employment, Defendants paid Plaintiff Angel his wages by check.

145.     From approximately April 2017 until on or about May 2017, Defendants paid Plaintiff Angel $12.50 per hour.

146.     From approximately May 2017 until on or about May 31, 2018, Defendants paid Plaintiff Angel $13.00 per hour.

147.     From approximately June 1, 2018 until on or about June 16, 2018, Defendants paid Plaintiff Angel $14.00 per hour.

148.     For approximately two weeks in April 2017 and for approximately two weeks in June 2018, Defendants did not pay Plaintiff Angel any wages for his work.

149.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Angel regarding overtime and wages under the FLSA and NYLL.

150.     Defendants did not provide Plaintiff Angel an accurate statement of wages, as required by NYLL 195(3).

151.    Defendants did not give any notice to Plaintiff Angel, in English and in Spanish (Plaintiff Angel's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

152.    Defendants required Plaintiff Angel to purchase "tools of the trade" with his own funds—including two knives.

*Plaintiff Idor Jean Luckner*

153.    Plaintiff Luckner was employed by Defendants from approximately November 2015 until on or about June 17, 2018.

154.    Defendants ostensibly employed Plaintiff Luckner as a delivery worker.

155.    However, Plaintiff Luckner was also required to spend a significant portion of his work day performing the non-tipped duties described above.

156.    Although Plaintiff Luckner ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

157.    Plaintiff Luckner regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

158.    Plaintiff Luckner's work duties required neither discretion nor independent judgment.

159.    Throughout his employment with Defendants, Plaintiff Luckner regularly worked in excess of 40 hours per week.

160.    From approximately November 2015 until on or about June 17, 2018, Plaintiff Luckner worked from approximately 1:00 p.m. until on or about 8:30 p.m., six days a week (typically 45 hours per week).

161.    Throughout his employment, Defendants paid Plaintiff Luckner his wages in cash.

162.     From approximately November 2015 until on or about June 17, 2018, Defendants paid Plaintiff Luckner a fixed salary of $350 per week.

163.     Plaintiff Luckner's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

164.     For example, Defendants required Plaintiff Luckner to work an additional 30 minutes past his scheduled departure time every day, and did not pay him for the additional time he worked.

165.     Plaintiff Luckner was never notified by Defendants that his tips were being included as an offset for wages.

166.     Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Luckner's wages.

167.     Defendants required Plaintiff Luckner to sign a document, the contents of which he was not allowed to review in detail, in order to release his weekly pay.

168.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Luckner regarding overtime and wages under the FLSA and NYLL.

169.     Defendants did not provide Plaintiff Luckner an accurate statement of wages, as required by NYLL 195(3).

170.     Defendants did not give any notice to Plaintiff Luckner, in English and in Spanish (Plaintiff Luckner's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

171.     Defendants required Plaintiff Luckner to purchase "tools of the trade" with his own funds—including one shirt every three months and one hat.

*Plaintiff Jose Cedano*

172. Plaintiff Cedano was employed by Defendants from approximately April 23, 2011 until on or about June 17, 2018.

173. Defendants employed Plaintiff Cedano as a manager.

174. Plaintiff Cedano regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

175. Plaintiff Cedano's work duties required neither discretion nor independent judgment.

176. Throughout his employment with Defendants, Plaintiff Cedano regularly worked in excess of 40 hours per week.

177. From approximately June 2012 until on or about June 17, 2018, Plaintiff Cedano worked from approximately 1:00 p.m. until on or about 9:00 p.m. to 10:00 p.m., Mondays, Wednesdays, and Thursdays, from approximately 10:00 a.m. until on or about 9:00 p.m., Fridays, from approximately 6:00 a.m. until on or about 9:00 p.m., Saturdays, and from approximately 9:00 a.m. until on or about 9:00 p.m., Sundays (typically 62 to 65 hours per week).

178. Throughout his employment, Defendants paid Plaintiff Cedano his wages in a combination of check and cash.

179. From approximately June 2012 until on or about December 2017, Defendants paid Plaintiff Cedano $9.00 per hour.

180. From approximately January 2018 until on or about June 17, 2018, Defendants paid Plaintiff Cedano $13.00 per hour and $13.50 per hour for hours worked over 40.

181. For approximately a week and a half in June 2018, Defendants did not pay Plaintiff Cedano any wages for his work.

182. Plaintiff Cedano's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

183.    For example, Defendants required Plaintiff Cedano to work an additional two to three hours past his scheduled departure time once a month, and did not pay him for the additional time he worked.

184.    Defendants never granted Plaintiff Cedano any breaks or meal periods of any kind.

185.    Nevertheless, Defendants deducted 30 minutes every day from Plaintiff Cedano's weekly paycheck for meals he never ate.

186.    Defendants took improper and illegal deductions of Plaintiff Cedano's wages.

187.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Cedano regarding overtime and wages under the FLSA and NYLL.

188.    Defendants did not provide Plaintiff Cedano an accurate statement of wages, as required by NYLL 195(3).

189.    Defendants did not give any notice to Plaintiff Cedano, in English and in Spanish (Plaintiff Cedano's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Plaintiff Jose G. Reyes*

190.    Plaintiff Reyes was employed by Defendants from approximately October 2015 until on or about June 17, 2018.

191.    Defendants employed Plaintiff Reyes as a sandwich preparer.

192.    Plaintiff Reyes regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

193.    Plaintiff Reyes's work duties required neither discretion nor independent judgment.

194.    Throughout his employment with Defendants, Plaintiff Reyes regularly worked in excess of 40 hours per week.

195. From approximately October 2015 until on or about December 2015, Plaintiff Reyes worked from approximately 7:00 a.m. until on or about 2:00 p.m., six days a week (typically 42 hours per week).

196. From approximately April 2016 until on or about December 2016, Plaintiff Reyes worked from approximately 7:00 a.m. until on or about 2:00 p.m., five days a week and from approximately 7:00 a.m. until on or about 3:00 p.m., one day a week (typically 43 hours per week).

197. From approximately October 2015 until on or about December 2017, Defendants paid Plaintiff Reyes his wages in cash.

198. From approximately January 2018 until on or about June 17, 2018, Defendants paid Plaintiff Reyes his wages in a combination of check and cash.

199. From approximately October 2015 until on or about December 2016, Defendants paid Plaintiff Reyes $9.50 per hour.

200. From approximately April 2016 until on or about December 2016, Defendants paid Plaintiff Reyes $9.50 per hour and $13.10 per hour for hours worked over 40.

201. For approximately one week in June 2018, Defendants did not pay Plaintiff Reyes any wages for his work.

202. No notification, either in the form of posted notices or other means, was ever given to Plaintiff Reyes regarding overtime and wages under the FLSA and NYLL.

203. Defendants did not provide Plaintiff Reyes an accurate statement of wages, as required by NYLL 195(3).

204. Defendants did not give any notice to Plaintiff Reyes, in English and in Spanish (Plaintiff Reyes's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Plaintiff Luis Alberto Salas Umana*

205. Plaintiff Salas was employed by Defendants from approximately May 3, 2018 until on or about June 17, 2018.

206. Defendants ostensibly employed Plaintiff Salas as a delivery worker.

207. However, Plaintiff Salas was also required to spend a significant portion of his work day performing the non-tipped duties described above.

208. Although Plaintiff Salas ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

209. Plaintiff Salas regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

210. Plaintiff Salas's work duties required neither discretion nor independent judgment.

211. Throughout his employment with Defendants, Plaintiff Salas regularly worked in excess of 40 hours per week.

212. From approximately May 3, 2018 until on or about June 17, 2018, Plaintiff Salas worked from approximately 6:00 a.m. until on or about 1:30 p.m. five days a week and from approximately 6:00 a.m. until on or about 2:30 p.m. one day a week (typically 46 hours per week).

213. For approximately one week in this time period, Plaintiff Salas worked from approximately 6:00 a.m. until on or about 1:30 p.m. six days a week and from approximately 6:00 a.m. until on or about 2:30 p.m. one day a week (typically 53.5 hours per week).

214. Throughout his employment, Defendants paid Plaintiff Salas his wages by check.

215. From approximately May 3, 2018 until on or about June 17, 2018, Defendants paid Plaintiff Salas $9.80 per hour.

216. However, throughout his employment, Plaintiff Salas was paid for only 40 hours.

217.   For approximately one week and a half in June 2018, Defendants did not pay Plaintiff Salas any wages for his work.

218.   Plaintiff Salas's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

219.   For example, Defendants required Plaintiff Salas to work an additional one hour past his scheduled departure time once a week, and did not pay him for the additional time he worked.

220.   Defendants never granted Plaintiff Salas any breaks or meal periods of any kind.

221.   Plaintiff Salas was never notified by Defendants that his tips were being included as an offset for wages.

222.   Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Salas's wages.

223.   No notification, either in the form of posted notices or other means, was ever given to Plaintiff Salas regarding overtime and wages under the FLSA and NYLL.

224.   Defendants did not provide Plaintiff Salas an accurate statement of wages, as required by NYLL 195(3).

225.   Defendants did not give any notice to Plaintiff Salas, in English and in Spanish (Plaintiff Salas's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

226.   Defendants required Plaintiff Salas to purchase "tools of the trade" with his own funds—including a bicycle and maintenance.

*Plaintiff Wendy Patricia Damas*

227.   Plaintiff Patricia was employed by Defendants from approximately January 2018 until on or about June 17, 2018.

228. Defendants employed Plaintiff Patricia as a smoothie and juice maker.

229. Plaintiff Patricia regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

230. Plaintiff Patricia's work duties required neither discretion nor independent judgment.

231. From approximately January 2018 until on or about June 17, 2018, Plaintiff Patricia worked from approximately 8:00 a.m. until on or about 3:20 p.m., Tuesdays to Sundays (typically 44 hours per week).

232. Throughout her employment, Defendants paid Plaintiff Patricia her wages by check.

233. From approximately January 2018 until on or about June 17, 2018, Defendants paid Plaintiff Patricia $13.00 per hour.

234. However, throughout her employment, defendants only paid Plaintiff Patricia 40 hours.

235. For approximately two weeks in June 2018, Defendants did not pay Plaintiff Patricia any wages for her work.

236. Plaintiff Patricia's pay did not vary even when she was required to stay later or work a longer day than her usual schedule.

237. For example, Defendants required Plaintiff Patricia to work an additional 20 minutes past her scheduled departure time six days a week, and did not pay her for the additional time she worked.

238. Defendants never granted Plaintiff Patricia any breaks or meal periods of any kind.

239. Nevertheless, Defendants deducted 30 minutes every day from Plaintiff Patricia's weekly paycheck for lunch breaks they never allowed her to take.

240. No notification, either in the form of posted notices or other means, was ever given to Plaintiff Patricia regarding overtime and wages under the FLSA and NYLL.

241. Defendants did not provide Plaintiff Patricia an accurate statement of wages, as required by NYLL 195(3).

242. Defendants did not give any notice to Plaintiff Patricia, in English and in Spanish (Plaintiff Patricia's primary language), of her rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Plaintiff Poco J. Ouedraogo*

243. Plaintiff Ouedraogo was employed by Defendants from approximately January 2017 until on or about June 18, 2018.

244. Defendants employed Plaintiff Ouedraogo as a delivery worker.

245. Plaintiff Ouedraogo regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

246. Plaintiff Ouedraogo's work duties required neither discretion nor independent judgment.

247. From approximately January 2017 until on or about June 18, 2018, Plaintiff Ouedraogo worked from approximately 6:00 a.m. until on or about 2:30 p.m., Mondays, Wednesdays, and Thursdays and from approximately 1:00 p.m. until on or about 8:00 p.m., Fridays, Saturdays, and Sundays (typically 46.5 hours per week).

248. Throughout his employment, Defendants paid Plaintiff Ouedraogo his wages in cash.

249. From approximately January 2018 until on or about June 18, 2018, Defendants paid Plaintiff Ouedraogo $13.00 per hour.

250. For approximately a week and a half in June 2018, Defendants did not pay Plaintiff Ouedraogo any wages for his work.

251. Defendants required Plaintiff Ouedraogo to sign a document, the contents of which he was not allowed to review in detail, in order to release his weekly pay.

252. No notification, either in the form of posted notices or other means, was ever given to Plaintiff Ouedraogo regarding overtime and wages under the FLSA and NYLL.

253. Defendants did not provide Plaintiff Ouedraogo an accurate statement of wages, as required by NYLL 195(3).

254. Defendants did not give any notice to Plaintiff Ouedraogo, in English and in Spanish (Plaintiff Ouedraogo's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Plaintiff Susana E. Robles Martinez*

255. Plaintiff Robles was employed by Defendants from approximately August 20, 2013 until on or about February 2017 and from approximately August 2017 until on or about June 15, 2018.

256. Defendants employed Plaintiff Robles as a smoothie maker from approximately August 20, 2013 until on or about December 2014 and as a cashier from approximately January 2015 until on or about June 15, 2018.

257. Plaintiff Robles regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

258. Plaintiff Robles's work duties required neither discretion nor independent judgment.

259. From approximately August 2017 until on or about June 15, 2018, Plaintiff Robles worked from approximately 7:00 a.m. until on or about 1:00 p.m. Mondays through Fridays (typically 30 hours per week).

260. Throughout her employment, Defendants paid Plaintiff Robles her wages by check.

261. From approximately January 2018 until on or about June 15, 2018, Defendants paid Plaintiff Robles $13.00 per hour.

262. For approximately five days in June 2018, Defendants did not pay Plaintiff Robles any wages for her work.

263. Defendants required Plaintiff Robles to sign a document, the contents of which she was not allowed to review in detail, in order to release her weekly pay.

264. No notification, either in the form of posted notices or other means, was ever given to Plaintiff Robles regarding overtime and wages under the FLSA and NYLL.

265. Defendants did not provide Plaintiff Robles an accurate statement of wages, as required by NYLL 195(3).

266. Defendants did not give any notice to Plaintiff Robles, in English and in Spanish (Plaintiff Robles's primary language), of her rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Defendants' General Employment Practices*

267. At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs (and all similarly situated employees) to work in excess of 40 hours a week without paying them appropriate minimum wage, spread of hours pay, and overtime compensation as required by federal and state laws.

268.     Plaintiffs were victims of Defendants' common policy and practices which violate their rights under the FLSA and New York Labor Law by, *inter alia*, not paying them the wages they were owed for the hours they worked.

269.     Defendants' pay practices resulted in Plaintiffs not receiving payment for all their hours worked, and resulted in Plaintiffs' effective rate of pay falling below the required minimum wage rate.

270.     Defendants habitually required Plaintiffs to work additional hours beyond their regular shifts but did not provide them with any additional compensation.

271.     Defendants required Plaintiffs Romano, Luckner, Salas, Ouedraogo, and all other delivery workers to perform general non-tipped tasks in addition to their primary duties as delivery workers.

272.     Plaintiffs Romano, Luckner, Salas, and Ouedraogo and all similarly situated employees, ostensibly were employed as tipped employees by Defendants, although their actual duties included a significant amount of time spent performing the non-tipped duties outlined above.

273.      Plaintiffs Romano, Luckner, Salas, and Ouedraogo's duties were not incidental to their occupation as tipped workers, but instead constituted entirely unrelated general bagel shop work with duties, including the non-tipped duties described above.

274.     These Plaintiffs and all other tipped workers were paid the tip-credit rate by Defendants.

275.     However, under state law, Defendants were not entitled to a tip credit because the tipped worker's and these Plaintiffs' non-tipped duties exceeded 20% of each workday (or 2 hours a day, whichever is less) (12 N.Y.C.R.R. § 146).

276.     New York State regulations provide that an employee cannot be classified as a tipped employee on any day in which he or she has been assigned to work in an occupation in which tips are not customarily received. (12 N.Y.C.R.R. §§137-3.3 and 137-3.4). Similarly, under federal regulation 29 C.F.R. §531.56(e), an employer may not take a tip credit for any employee time if that time is devoted to a non-tipped occupation.

277.     In violation of federal and state law as codified above, Defendants classified Plaintiffs Romano, Luckner, Salas, and Ouedraogo and other tipped workers as tipped employees, and paid them the tip credit rate when they should have classified them as non-tipped employees and paid them at the minimum wage rate.

278.     Defendants failed to inform Plaintiffs Romano, Luckner, Salas, and Ouedraogo who received tips that Defendants intended to take a deduction against Plaintiffs' earned wages for tip income, as required by the NYLL before any deduction may be taken.

279.     Defendants failed to inform Plaintiffs Romano, Luckner, Salas, and Ouedraogo who received tips, that their tips were being credited towards the payment of the minimum wage.

280.     Defendants failed to maintain a record of tips earned by Plaintiff Romano, Luckner, Salas, and Ouedraogo who worked as delivery workers for the tips they received.

281.     As part of its regular business practice, Defendants intentionally, willfully, and repeatedly harmed Plaintiffs who received tips, by engaging in a pattern, practice, and/or policy of violating the FLSA and the NYLL. This policy and pattern or practice included depriving delivery workers of a portion of the tips earned during the course of employment.

282.     Defendants unlawfully misappropriated charges purported to be gratuities received by tipped Plaintiffs, and other tipped employees, in violation of New York Labor Law § 196-d (2007).

283. Under the FLSA and NYLL, in order to be eligible for a "tip credit," employers of tipped employees must either allow employees to keep all the tips that they receive or forgo the tip credit and pay them the full hourly minimum wage.

284. Defendants willfully disregarded and purposefully evaded recordkeeping requirements of the FLSA and NYLL by failing to maintain accurate and complete timesheets and payroll records.

285. Defendants' time keeping system did not reflect the actual hours that Plaintiffs worked.

286. Defendants paid Plaintiffs Cazares, Delacruz, Lizardo, Romano, Luckner, and Ouedraogo their wages in cash.

287. Defendants paid Plaintiffs Angel, Salas, Patricia, and Robles their wages by check.

288. Defendants paid Plaintiffs Cedano and Reyes their wages in a combination of check and cash.

289. Defendants required Plaintiffs to sign a document the contents of which they were not allowed to review in order to release their wages.

290. Defendants required Plaintiffs to sign a document that reflected inaccurate or false hours worked.

291. Defendants failed to post at the workplace, or otherwise provide to employees, the required postings or notices to employees regarding the applicable wage and hour requirements of the FLSA and NYLL.

292. Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours Plaintiffs (and similarly situated individuals) worked, and to avoid paying Plaintiffs properly for their full hours worked.

293. Defendants engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

294. Defendants' unlawful conduct was intentional, willful, in bad faith, and caused significant damages to Plaintiffs and other similarly situated former workers.

295. Defendants failed to provide Plaintiffs and other employees with accurate wage statements at the time of their payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

296. Defendants failed to provide Plaintiffs and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

## FLSA COLLECTIVE ACTION CLAIMS

297. Plaintiffs bring their FLSA minimum wage, overtime compensation, and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf

of all similarly situated persons (the "FLSA Class members"), i.e., persons who are or were employed by Defendants or any of them, on or after the date that is three years before the filing of the complaint in this case (the "FLSA Class Period").

298. At all relevant times, Plaintiffs and other members of the FLSA Class were similarly situated in that they had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans including willfully failing and refusing to pay them the required minimum wage, overtime pay at a one and one-half their regular rates for work in excess of forty (40) hours per workweek under the FLSA, and willfully failing to keep records under the FLSA.

299. The claims of Plaintiffs stated herein are similar to those of the other employees.

## FIRST CAUSE OF ACTION

### VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA

300. Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

301. At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d). Defendants had the power to hire and fire Plaintiffs (and the FLSA Class Members), controlled the terms and conditions of their employment, and determined the rate and method of any compensation in exchange for their employment.

302. At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

303. Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

304. Defendants failed to pay Plaintiffs (and the FLSA Class members) at the applicable

minimum hourly rate, in violation of 29 U.S.C. § 206(a).

305.     Defendants' failure to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

306.     Plaintiffs (and the FLSA Class members) were damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

## VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA

307.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

308.     Defendants' failure to pay Plaintiffs (and the FLSA Class members), overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

309.     Plaintiffs (and the FLSA Class members) were damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

## VIOLATION OF THE NEW YORK MINIMUM WAGE ACT

310.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

311.     At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.  Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of their employment, and determined the rates and methods of any compensation in exchange for their employment.

312.     Defendants, in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor, paid Plaintiffs less than the minimum wage.

313.     Defendants' failure to pay Plaintiffs the minimum wage was willful within the meaning of N.Y. Lab. Law § 663.

314.     Plaintiffs were damaged in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION

## VIOLATION OF THE OVERTIME PROVISIONS

## OF THE NEW YORK STATE LABOR LAW

315.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

316.     Defendants, in violation of N.Y. Lab. Law § 190 *et seq*., and supporting regulations of the New York State Department of Labor, failed to pay Plaintiffs overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

317.     Defendants' failure to pay Plaintiffs overtime compensation was willful within the meaning of N.Y. Lab. Law § 663.

318.     Plaintiffs were damaged in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION

## VIOLATION OF THE SPREAD OF HOURS WAGE ORDER

## OF THE NEW YORK COMMISSIONER OF LABOR

319.     Plaintiffs Cazares, Lizardo, and Cedano repeat and reallege all paragraphs above as though fully set forth herein.

320.     Defendants failed to pay Plaintiffs Cazares, Lizardo, and Cedano one additional hour's pay at the basic minimum wage rate before allowances for each day Plaintiffs' spread of hours exceeded ten hours in violation of NYLL §§ 650 *et seq*. and 12 N.Y.C.R.R. §§ 146-1.6.

321.     Defendants' failure to pay Plaintiffs Cazares, Lizardo, and Cedano an additional hour's pay for each day Plaintiffs' spread of hours exceeded ten hours was willful within the meaning of NYLL § 663.

322.     Plaintiffs Cazares, Lizardo, and Cedano were damaged in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION

## VIOLATION OF THE NOTICE AND RECORDKEEPING

## REQUIREMENTS OF THE NEW YORK LABOR LAW

323.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

324.     Defendants failed to provide Plaintiffs with a written notice, in English and in Spanish (Plaintiffs' primary language), containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by NYLL §195(1).

325.     Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## SEVENTH CAUSE OF ACTION

## VIOLATION OF THE WAGE STATEMENT PROVISIONS

## OF THE NEW YORK LABOR LAW

326.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

327.     With each payment of wages, Defendants failed to provide Plaintiffs with an accurate statement listing each of the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross

wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL 195(3).

328.     Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

**EIGHTH CAUSE OF ACTION**

**RECOVERY OF EQUIPMENT COSTS**

329.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

330.     Defendants required Plaintiffs to pay, without reimbursement, the costs and expenses for purchasing and maintaining equipment and "tools of the trade" required to perform their jobs, further reducing their wages in violation of the FLSA and NYLL.  29 U.S.C.  § 206(a); 29 C.F.R. § 531.35; N.Y. Lab. Law §§ 193 and 198-b.

331.     Plaintiffs were damaged in an amount to be determined at trial.

**NINTH CAUSE OF ACTION**

**UNLAWFUL DEDUCTIONS FROM TIPS IN VIOLATION**

**OF THE NEW YORK LABOR LAW**

332.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

333.     At all relevant times, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.

334.     New York State Labor Law § 196-d prohibits any employer or his agents, including owners and managers, from demanding or accepting, directly or indirectly, any part of the gratuities received by an employee, or retaining any part of a gratuity, or any charge purported to be a gratuity, for an employee.

335.     Defendants unlawfully misappropriated a portion of Plaintiffs' tips that were received from customers.

336.     Defendants knowingly and intentionally retained a portion of Plaintiffs' tips in violations of the NYLL and supporting Department of Labor Regulations.

Plaintiffs were damaged in an amount to be determined at trial.

## TENTH CAUSE OF ACTION

## VIOLATION OF THE TIMELY PAYMENT PROVISIONS

## OF THE NEW YORK LABOR LAW

337.     Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

338.     Defendants did not pay Plaintiffs on a regular weekly basis, in violation of NYLL §191.

339.     Defendants are liable to each Plaintiff in an amount to be determined at trial.

## ELEVENTH CAUSE OF ACTION

## UNLAWFUL DEDUCTIONS FROM WAGES IN VIOLATION

## OF THE NEW YORK LABOR LAW

340.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

341.     At all relevant times, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.

342.     Defendants made unlawful deductions from Plaintiffs' wages including, but not limited to, deductions for meal breaks Plaintiffs were not permitted to and did not take.

343.     The deductions made from Plaintiffs' wages were not authorized or permitted by law.

344.     Through their knowing and intentional efforts to take unauthorized deductions from Plaintiffs' wages, Defendants willfully violated NYLL, Article 6, §§ 190 *et seq.*, and supporting

New York State regulations.

345.    Plaintiffs were damaged in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants by:

(a)    Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members apprising them of the pendency of this action, and permitting them to promptly file consents to be Plaintiffs in the FLSA claims in this action;

(b)    Declaring that Defendants violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(c)    Declaring that Defendants violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(d)    Declaring that Defendants violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs' and the FLSA Class members' compensation, hours, wages, and any deductions or credits taken against wages;

(e)    Declaring that Defendants' violations of the provisions of the FLSA were willful as to Plaintiffs and the FLSA Class members;

(f)    Awarding Plaintiffs and the FLSA Class members damages for the amount of unpaid minimum wage, overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(g)    Awarding Plaintiffs and the FLSA Class members liquidated damages in an amount equal to 100% of their damages for the amount of unpaid minimum wage and overtime

compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(h)     Declaring that Defendants violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(i)     Declaring that Defendants violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(j)     Declaring that Defendants violated the spread-of-hours requirements of the NYLL and supporting regulations as to Plaintiffs Cazares, Lizardo, and Cedano;

(k)     Declaring that Defendants violated the timely payment provisions of the NYLL as to Plaintiffs;

(l)     Declaring that Defendants violated the notice and recordkeeping requirements of the NYLL with respect to Plaintiffs' compensation, hours, wages and any deductions or credits taken against wages;

(m)     Declaring that Defendants' violations of the provisions of the NYLL and spread of hours wage order were willful as to Plaintiffs;

(n)     Awarding Plaintiffs damages for the amount of unpaid minimum wage and overtime compensation, and for any improper deductions or credits taken against wages, as well as awarding spread of hours pay under the NYLL as applicable

(o)     Awarding Plaintiffs damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(p)     Awarding Plaintiffs liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage, overtime compensation, and spread of hours pay shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to

NYLL § 198(3);

(q)     Awarding Plaintiffs and the FLSA Class members pre-judgment and post-judgment interest as applicable;

(r)      Awarding Plaintiffs and the FLSA Class members the expenses incurred in this action, including costs and attorneys' fees;

(s)     Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(t)     All such other and further relief as the Court deems just and proper.

## JURY DEMAND

 Plaintiffs demand a trial by jury on all issues triable by a jury.

Dated:  New York, New York

June 30, 2018

MICHAEL FAILLACE & ASSOCIATES, P.C.

By:      /s/ Michael Faillace
Michael Faillace [MF-8436]
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

# Michael Faillace & Associates, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

June 22, 2018

BY HAND

TO: Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                          Ascencion Cazares

Legal Representative / Abogado:         Michael Faillace & Associates, P.C.

Signature / Firma:                      *Ascencion Cazares*

Date / Fecha:                           22 de junio de 2018

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

June 22, 2018

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:    Benjamin F Delacruz

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:    22 de junio de 2018

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

June 22, 2018

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                          Fanny Jisselle Lizardo Fabre

Legal Representative / Abogado:         Michael Faillace & Associates, P.C.

Signature / Firma:                      Fanny

Date / Fecha:                           22 de junio de 2018

# Michael Faillace & Associates, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

June 22, 2018

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Gabino Romano Hernandez

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                      22 de junio de 2018

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

June 28, 2018

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                          **Hermenejildo Angel Prudente**

                                        Michael Faillace & Associates, P.C.

Legal Representative / Abogado:

                                        *Hermenegildo Angel*

Signature / Firma:

                                        28 de junio de 2018

Date / Fecha:

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

June 22, 2018

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                          Idor Jean Luckner

Legal Representative / Abogado:       Michael Faillace & Associates, P.C.

Signature / Firma:                         _Idor Jean Luckner_

Date / Fecha:                                 22 de junio de 2018

# MICHAEL FAILLACE & ASSOCIATES, P.C.

Employment and Litigation Attorneys

60 E. 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

June 22, 2018

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff. **(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Jose Cedano
Legal Representative / Abogado:   Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                     22 de Junio 2018

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

June 22, 2018

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                        <u>Jose G. Reyes</u>

<u>Michael Faillace & Associates, P.C.</u>

Legal Representative / Abogado:

Signature / Firma:

<u>        22 de junio de 2018        </u>

Date / Fecha:

# MICHAEL FAILLACE & ASSOCIATES, P.C.
### Employment and Litigation Attorneys

One Grand Central Place
60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620
Email: Faillace@employmentcompliance.com

June 22, 2018

By Hand

To: Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff. (Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes).

Name / Nombre:                         Luis Alberto Salas Umana

Legal Representative / Abogado:        Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                          June 22, 2018

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

June 22, 2018

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                          Poco J  Ouedraogo

Legal Representative / Abogado:     Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                              22 de junio 2018

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

June 22, 2018

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Susana E.  Robles  Martinez

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                     22 de junio

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

June 22, 2018

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Wendy Patricia Damas

Legal Representative / Abogado:     Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                     22 de junio

*Certified as a minority-owned business in the State of New York*