UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ASCENCION CAZARES, BENJAMIN F. DELACRUZ, FANNY JISSELLE LIZARDO FABRE, GABINO ROMANO HERNANDEZ, HERMENEJILDO ANGEL PRUDENTE, IDOR JEAN LUCKNER, JOSE CEDANO, JOSE G. REYES, LUIS ALBERTO SALAS UMANA, WENDY PATRICIA DAMAS, POCO J. OUEDRAOGO, AND SUSANA E. ROBLES MARTINEZ, *individually and on behalf of others similarly situated,* | 18cv5953 (AJN) (DF)<br><br>**REPORT AND RECOMMENDATION** |
|                     Plaintiffs, | |
|               -against- | |
| 2898 BAGEL & BAKERY CORP. (d/b/a NUSSBAUM & WU) and SHLOMO SELA | |
|                   Defendants. | |

**TO THE HONORABLE ALISON J. NATHAN, U.S.D.J.:**

This wage-and-hour case, brought under the Fair Labor Standards Act (the "FLSA"),

29 U.S.C. §§ 201, *et seq.*, and the New York Labor Law (the "NYLL"), §§ 190, *et. seq.*, and 650,

*et seq.*, has been referred to this Court for an inquest, to determine the amount of damages and

attorneys' fees to which the 12 named plaintiffs:

      (1)     Ascencion Cazares ("Cazares"),
      (2)     Benjamin F. Delacruz ("Delacruz"),
      (3)     Fanny Jisselle Lizardo Fabre ("Lizardo"),
      (4)     Gabino Romano Hernandez ("Romano"),
      (5)     Hermenejildo Angel Prudente ("Angel"),
      (6)     Idor Jean Luckner ("Luckner"),
      (7)     Jose Cedano ("Cedano"),
      (8)     Jose G. Reyes ("Reyes"),
      (9)     Luis Alberto Salas Umana ("Salas"),
     (10)    Wendy Patricia Damas ("Damas"),
     (11)    Poco J. Ouedraogo ("Ouedraogo"), and
     (12)    Susana E. Robles Martinez ("Robles")

(collectively, "Plaintiffs") are entitled, upon the default of defendants 2898 Bagel & Bakery

Corp., d/b/a Nussbaum & Wu ("2898 Bagel") and Shlomo Sela ("Sela") (collectively,

"Defendants").[1]  For the reasons discussed below, I recommend no damages be awarded to

plaintiffs Lizardo, Luckner, Cedano, Reyes, Salas, Damas, and Ouedraogo, and that, as to the

remaining plaintiffs (Cazares, Delacruz, Romano, Angel, and Robles), judgment be entered

against Defendants, jointly and severally, for the damages amounts and fees calculated herein.

## BACKGROUND

### A.   Factual Background[2]

In their Amended Complaint, Plaintiffs alleged that they were all previously employed by

Defendants at a bagel shop in New York City known as "Nussbaum & Wu," which Defendants

owned, operated, or controlled.  (*See* Am. Comp. ¶¶ 1-2, 45.)  Plaintiffs allegedly worked in a

---

[1] Plaintiffs named an additional defendant, Natalie Gil ("Gil") in their Amended Complaint (*see* First Amended Complaint, dated July 25, 2018 ("Am. Compl.") (Dkt. 11), but Gil was apparently never served with process, and, at Plaintiffs' request, their claims against her were dismissed without prejudice.  (*See* Order dated Feb. 19, 2019 (Mem. Endors.) (Dkt. 38).)

[2] The facts summarized in this Report and Recommendation are taken from Plaintiffs' First Amended Complaint, dated July 25, 2018 ("Amended Complaint" or "Am. Compl.") (Dkt. 11), and, where indicated, *infra*, from the more detailed recitations contained in the Declarations submitted by certain of the Plaintiffs (*see* Declaration of Michael Faillace, Esq. in Support of Plaintiffs' Motion for Default Judgment, dated Mar. 4, 2019 (Dk. 46), Exs. G (Declaration of Ascension Cazares in Support of Plaintiffs' Motion for Default Judgment, dated Mar. 4, 2019 ("Cazares Decl.") (Dkt. 46-7)); H (Declaration of Benjamin F. Delacruz in Support of Plaintiffs' Motion for Default Judgment, dated Mar. 4, 2019 ("Delacruz Decl.") (Dkt. 46-8)); I (Declaration of Gabino Romano Hernandez in Support of Plaintiffs' Motion for Default Judgment, dated Mar. 4, 2019 ("Romano Decl.") (Dkt. 46-9)); J (Declaration of Hermenejildo Angel Prudente in Support of Plaintiffs' Motion for Default Judgment, dated Mar. 4, 2019) ("Angel Decl.") (Dkt. 46-10)); K (Declaration of Jose Cedano in Support of Plaintiffs' Motion for Default Judgment, dated Mar. 27, 2019 ("Cedano Decl.") (Dkt. 46-11)); L (Declaration of Susana E. Robles in Support of Plaintiffs' Motion for Default Judgment, dated Mar. 4, 2019 ("Robles Decl.") (Dkt. 46-12)).

variety of capacities at the bagel shop; some, for example, claimed to have prepared food, while others served in roles like delivery workers or cashiers.  (*See id*. ¶ 4.)

Plaintiffs mostly claimed that, during their employment, they were not paid the required minimum wage, and/or were not properly compensated for overtime hours or given "spread-of-hours" pay, as required by the NYLL.  (*See id*. ¶ 6, *see also, e.g.*, ¶¶ 7, 16-17, 79, 267.)  In connection with their claims for unpaid wages, certain of the Plaintiffs alleged that Defendants deprived them of breaks or meal periods, but nonetheless reduced their pay as if such breaks had been given.  (*See id*. ¶¶ 77, 106-07, 184-86, 220, 238-39.)  Some of the Plaintiffs also alleged that Defendants improperly characterized them as "tipped" employees so as to pay them at the lower "tip credit" wage rate, while still requiring them to perform a substantial amount of non-tipped work (*id*. ¶¶ 5, 10-13, 113-15, 155-56, 207-08), and/or that Defendants unlawfully misappropriated their tips and made improper deductions from their wages because of their tips (*id*. ¶ 14, *see also id*. ¶¶ 165-66, 221-22).  Certain of the Plaintiffs further alleged that they were required to spend their own funds to purchase "tools of the trade" – such as clothing required for their jobs, or knives for use in the kitchen, or a bicycle for use in making deliveries.  (*See id*. ¶¶ 82, 97, 152, 171, 226.)  Finally, Plaintiffs alleged that none of them were given the wage statements and wage notices required under the NYLL (*see id*. ¶¶ 295, 326-28), and they generally alleged that Defendants failed "to maintain accurate recordkeeping" with respect to the hours that they worked (*id*. ¶ 7).

## B.  Procedural History

### 1.  Defendants' Default

Plaintiffs filed their Amended Complaint on July 25, 2018 (Dkt. 11), and then filed affidavits of service, reflecting that Defendants were duly served with process by at least

August 22, 2018 (*see* Dkts. 16, 17, 18, 20).  When Defendants then failed to respond, Plaintiffs

eventually sought to have defaults entered against Defendants, and Clerk of the Court issued

Certificates of Default on February 28, 2019.  (Dkts. 43, 44.)

On March 4, 2019, Plaintiffs proceeded to file a motion for a default judgment against

both Defendants (Dkt. 45), and, on May 31, 2020, the Honorable Alison J. Nathan, U.S.D.J.

granted that motion in part, entering a default judgment against Defendants on most of Plaintiffs'

claims (*see generally* 5/31/20 Order (Dkt. 56)).[3]  In her decision, Judge Nathan found that

Plaintiffs' well-pleaded allegations were sufficient to establish that, during the relevant times,

Defendants had served as Plaintiffs' joint employers for purposes of the FLSA; that Plaintiffs'

work had involved interstate activities, sufficient to give rise to FLSA coverage; and that

Defendants were jointly and severally liable for any damages awards made in Plaintiffs' favor,

for violations of either the FLSA or NYLL.  (*See id.*, at 7-8, 10.)  Also finding, however, that

there were certain obvious flaws in the damages calculations that Plaintiffs had submitted, Judge

Nathan referred the case to this Court for an inquest on the amount of damages and attorneys'

fees that should be awarded.  (*See* Order of Reference, dated June 5, 2020 (Dkt. 58).)

## 2.    <u>This Court's Initial Scheduling Order For an Inquest</u>

Noting that, in connection with their motion for a default judgment, Plaintiffs had already

filed papers setting out the amounts claimed to be due from Defendants in damages, interest,

attorneys' fees, and costs, as well as the basis for those claims (*see* Faillace Decl. (Dkt. 46) and

exhibits thereto), this Court issued a Scheduling Order on June 25, 2020 that afforded

---

[3] The Court found that Plaintiffs had *not* established liability on either their claims under Section 191 of the NYLL, which were duplicative of their minimum-wage claims (*see* 5/31/20 Order, at 9 n.5), or their "tools of the trade" claims, as to which their pleading was insufficient (*see id.*, at 11-12).

Defendants an opportunity to respond to Plaintiffs' damages calculations by July 31, 2020

(Dkt. 60).  This Court expressly cautioned Defendants that, if they failed to respond to Plaintiffs'

submissions by that date, then this Court would proceed to issue a report and recommendation

concerning damages on the basis of Plaintiffs' submissions alone.  (*See id.*)  Defendants did not

file a response to Plaintiffs' submissions.

### 3.   This Court's Order Directing Plaintiffs To Supplement Their Inquest Submissions

After reviewing Plaintiffs' inquest submissions, however, this Court issued an Order on

June 7, 2021 ("6/7/21 Order") (Dkt. 62), directing Plaintiffs to supplement those submissions

with respect to the damages claims of seven of the 12 named Plaintiffs.  Specifically, as to six

plaintiffs – Lizardo, Luckner, Reyes, Salas, Damas, and Ouedraogo – this Court noted that no

affidavits, declarations, or documentary evidence had been submitted to support the damages that

were being claimed, as necessary to enable this Court to determine whether those plaintiffs were,

in fact, entitled to the damages sought.  (*See id*.)  Further, this Court observed that, although

plaintiff Cedano did submit a Declaration in support of his damages claims, that Declaration

(like the Amended Complaint) described Cedano as having been a "manager" when he worked

for Defendants and provided no detail regarding his job duties, raising a question as to whether

he was exempt from statutory minimum-wage and overtime requirements.  (*See id*.)  As, in the

absence of sufficient evidence, this Court could not make a recommendation as these plaintiffs'

proposed damages, this Court directed Plaintiff to provide the missing evidence no later than

June 25, 2021.  (*Id*.)

    **4.**        **Counsel's Motion To Withdraw
From Representing Plaintiff Damas,
and Request For an Extension of Time
To Make Supplemental Inquest Submissions**

Plaintiffs did not supplement their inquest submissions, as directed, by June 25, 2021.

Rather, Plaintiffs' counsel, then Michael Faillace, Esq. ("Faillace") of the firm Michael Faillace

& Associates, P.C. (the "Faillace Firm"), wrote to this Court *on that date*, requesting leave to

withdraw from representing one of the named plaintiffs, Damas, based on her reported lack of

responsiveness to counsel's efforts to contact her, and seeking a "brief" extension of time to

supplement Plaintiffs' inquest submissions until Damas either "resurfaced" or the Court granted

the firm leave to withdraw from representing her.  (Dkt. 64.)

After the motion to withdraw was referred to this Court (*see* Amended Order of

Reference, dated Sept. 13, 2021 (Dkt. 67)), this Court issued an Order directing the Faillace Firm

to serve its motion to withdraw on Damas, with a Spanish translation, and affording her an

opportunity to be heard with respect to the motion (Dkt. 68.  By that same Order, this Court

directed both the Faillace Firm and Damas to appear for a telephone conference on November 9,

2021.  (*Id.*)  Further, by separate Order dated October 6, 2021 (Dkt. 70), this Court extended to

November 23, 2021 Plaintiffs' deadline to make supplemental inquest submissions (*see id*.).

    **5.**        **Faillace's Withdrawal From Practice**

On November 6, 2021, three days before the scheduled conference, Faillace filed a

motion seeking to withdraw from representing all Plaintiffs in the action, informing the Court

that his last day of work with the Faillace Firm would be November 7, 2021, that it was

"expected that he [would] be suspended from practice by the Southern District of New York

effective November 8, 2021," that the Faillace Firm was "under new ownership and ha[d] been

renamed CSM Legal P.C." ("CSM Legal"), and that CSM Legal would "continue to represent

the Plaintiff(s) in this matter."  (Dkt. 74.)  This Court granted Faillace's motion to withdraw by Order dated November 8, 2021.  (Dkt. 75.)

      **6.**      **<ins>The November 9, 2021 Conference</ins>**

This Court then held the scheduled telephone conference on November 9, 2021.  (*See* Dkt.)  An associate from CSM Legal, Khalil Patrick Huey, Esq. ("Huey") appeared, but Damas did not.  At that conference, and given that this Court had been provided no details regarding the nature of the legal relationship between the Faillace Firm and CSM Legal, this Court sought to clarify whether the Faillace Firm's motion to withdraw from representing Damas should carry over to CSM Legal.  In addition, this Court sought to ascertain whether Damas had been made aware of the fact that another attorney would be taking over for Faillace as the lead counsel in the case.  On the latter point, this Court observed on the record that it was possible that Damas had "had a run-in with Mr. Faillace," and that she might be more interested in continuing with the case if she knew that any other attorney would be taking his place.

This Court therefore asked Huey to submit a follow-up letter to this Court, explaining the nature of the transition between the two law firms, and providing authority for its positions as to whether the Faillace Firm's motion to withdraw from representing Damas should extend to CSM Legal, and as to whether Faillace's departure should have any impact on the attorneys' fees that were being sought in connection with the pending inquest.  This Court also directed Huey to provide a copy of that letter to Damas, and, in addition, to explain to Damas that (1) if she wished to continue with representation by CSM Legal, a new partner would be in charge of the case; (2) if she wished to be heard with respect to the potential withdrawal of the new law firm, she should speak up promptly; and (3) she potentially stood to lose her claims, if she failed to participate any further in the lawsuit.  Finally, this Court noted, on the record of the November 9

conference, that it had extended Plaintiffs' deadline to make supplemental inquest submissions to November 23, and did not intend to extend that deadline any further. This Court informed Huey that, if it did not receive the supplemental submissions by that date, then it would be prepared to recommend damages only for those plaintiffs who had submitted declarations in support of their damages, and not for the remaining plaintiffs.

### 7.   Plaintiffs' Failure To Comply With This Court's Directives

Following the November 9 conference, CSM Legal made no submission to this Court that set out any legal authority for its position that the Faillace Firm's motion to withdraw from representing Damas should extend to CSM Legal. Nor did CSM Legal make any filing that demonstrated that it had sent a letter to Damas, explaining that there had been a change in law firms and in lead counsel. Nor did CSM Legal make any supplemental inquest submissions by November 23. Nor, prior to November 23, did it request any further extension of that deadline.

Rather, on November 24, *one day after the deadline*, Huey filed a letter (addressed to Judge Nathan), belatedly asking for an extension of time to December 7, 2021 to file Plaintiffs' supplemental inquest submissions. (Dkt. 76.) In that same letter, on the subject of the transition between law firms, Huey wrote only the following:

> I also write to apprise you of the state of the representation of this case. There will be a continuity in the representation of the Plaintiffs in this matter by the attorneys, except for Mr. Faillace, from the firm MICHAEL FAILLACE & ASSOCIATES, P.C., now represent the Plaintiffs as part of the firm, CSM Legal P.C.

(*Id.*) Even if this letter had been served on Damas (and CSM Legal filed no proof of such service), it obviously did nothing to inform Damas as to who the new partner in charge of her case would be, and it said nothing about giving Damas an opportunity to be heard as to whether, in light of the change in representation, she now wished to proceed with the case, represented by

CSM Legal.  On these issues, CSM Legal gave this Court no indication that it ever followed its instructions to reach out to Damas.

By Order dated December 2, 2021 (Dkt. 77), this Court granted the requested extension of time for Plaintiffs to file supplemental inquest submissions to December 7, but, in its Order, expressly cautioned:  "No further extensions of this deadline will be granted" (*id*).

Plaintiffs did not, however, meet this final December 7 deadline.  Instead, on December 8 – *again, after the deadline had expired* – Huey wrote to the Court (in a letter that was again addressed to Judge Nathan), asking for yet another extension of the submission deadline.  (Dkt. 78.)  By Order dated December 8, 2021 (Dkt. 79), this Court denied that request, noting that it "made clear that no further extensions would be granted" and that "Plaintiffs' counsel ha[d] had a substantial period of time to prepare and submit its supplemental submission since this Court first identified deficiencies" (*id*.).  Under the circumstances, this Court held that Plaintiffs' application for damages and attorneys' fees, upon Defendants' default, would be considered fully submitted.  Additionally, although this Court granted the motion of the Faillace Firm to withdraw from representing Damas, it held that CSM Legal would continue to represent Damas, absent further order of the Court.  On this point, this Court noted that CSM Legal had "failed to submit any authority to demonstrate that the motion [to withdraw] should extend to it as well, and [had] further failed to show that, in accordance with this Court's instructions, it made any effort to inform Damas of the change of counsel and to inquire as to whether the change might affect her willingness to participate in the suit."  (*Id*.)

## DISCUSSION

## I.   LEGAL STANDARDS APPLICABLE TO DAMAGES INQUESTS

"[D]efault is an admission of all well-pleaded allegations against the defaulting party."

*Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004) (citation

omitted).  Although a "'default judgment entered on well-pleaded allegations in a complaint

establishes a defendant's liability,'" it does not reach the issue of damages.  *Bambu Sales, Inc. v.*

*Ozak Trading, Inc.*, 58 F.3d 849, 854 (2d Cir. 1995) (quoting *Trans World Airlines, Inc. v.*

*Hughes*, 449 F.2d 51, 69 (2d Cir. 1971), *rev'd on other grounds*, 409 U.S. 363 (1973)).  In

conducting a damages inquest, the court accepts as true all of the factual allegations of the

complaint, except those relating to damages.  *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65

(2d Cir. 1981); *see also Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d

Cir. 1999) ("Even when a default judgment is warranted based on a party's failure to defend, the

allegations in the complaint with respect to the amount of the damages are not deemed true.").

A plaintiff must therefore substantiate a claim with evidence to prove the extent of

damages.  *See Trehan v. Von Tarkanyi*, 63 B.R. 1001, 1008 n.12 (S.D.N.Y. 1986) (plaintiff must

introduce evidence to prove damages suffered and the court will then determine whether the

relief flows from the facts (citing *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974))).  The

burden is on the plaintiff to "introduce sufficient evidence to establish the amount of damages

with reasonable certainty," *RGI Brands LLC v. Cognac Brisset-Aurige, S.A.R.L.*, No. 12cv1369

(LGS) (AJP), 2013 WL 1668206, at *6 (S.D.N.Y. Apr. 18, 2013) (citations omitted), *report and*

*recommendation adopted*, 2013 WL 4505255 (Aug. 23, 2013), although the plaintiff is entitled

to all reasonable inferences in its favor based on the evidence submitted, *see U.S. ex rel. Nat'l*

*Dev. & Constr. Corp. v. U.S. Envtl. Universal Servs., Inc.*, No. 11cv730 (CS), 2014 WL

4652712, at *3 (S.D.N.Y. Sept. 2, 2014) (adopting report and recommendation).  Where a

defaulting defendant has not made any submission on a damages inquest, the court must assess

whether the plaintiff has provided a sufficient basis for the court to determine damages, *see*

*Transatl. Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997),

and the Court may determine the adequacy of the plaintiff's damages claim based on its

submitted proofs alone, *see, e.g.*, *Garden City Boxing Club, Inc. v. Hernandez*, No. 04cv2081

(LAP) (DF), 2008 WL 4974583, at *4-5 (S.D.N.Y. Nov. 24, 2008) (determining the adequacy of

plaintiff's damages claim based solely on its submitted proofs where defendant neither

responded to plaintiff's submissions with respect to its claimed damages nor requested a

hearing).

While the court may hold a hearing to assess the amount of damages that should be

awarded on default, *see* Fed. R. Civ. P. 55(b)(2) (court may conduct hearings on damages as

necessary), the Second Circuit has consistently held that "[b]y its terms, [Rule] 55(b)(2) leaves

the decision of whether a hearing is necessary to the discretion of the district court," *Fustok v.*

*ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989); *accord Tamarin v. Adam Caterers,*

*Inc.*, 13 F.3d 51, 54 (2d Cir. 1993) (judges are given "much discretion" to determine whether an

inquest hearing need be held); *Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 508 (2d Cir. 1991)

(Fed. R. Civ. P. 55(b)(2) "allows but does not require . . . a hearing" (citations omitted)).

II.     **NO DAMAGES SHOULD BE AWARDED TO THOSE
        PLAINTIFFS WHO, DESPITE THIS COURT'S ORDER, DID NOT
        <u>PROVIDE EVIDENCE TO SUPPORT THEIR DAMAGES REQUESTS.</u>**

        A.     **The Failure of Plaintiffs Lizardo, Luckner, Reyes, Salas, Damas,
               <u>and Ouedraogo To Submit Supporting Affidavits or Declarations</u>**

As set out above, Plaintiffs did not submit affidavits or declarations in support of the

damages being sought for six of the 12 named plaintiffs, specifically Lizardo, Luckner, Reyes,

Salas, Damas, and Ouedraogo.  In pointing this out, and in affording Plaintiffs an opportunity to

supplement their submissions to address this deficiency, this Court wrote:

> This is far from the first time that Plaintiffs' counsel – the law firm
> of Michael Faillace & Associates, PC – has failed to submit
> evidence in support of a claim for damages, in a wage-and-hour
> case.  In fact, the firm's repeated failures in this regard were
> pointed out a few years ago by the Honorable Kevin Nathaniel
> Fox, U.S.M.J.  *See Hernandez Gomez v. 4 Runners, Inc.*,
> No. 14cv08998 (JPO) (KNF), 2017 WL 9802834, at *8 (S.D.N.Y.
> Dec. 6, 2017), *report and recommendation adopted,* 2018 WL
> 1940433 (Apr. 24, 2018), *affirmed in relevant part*, 769
> Fed. App'x 1 (2d Cir. Apr. 16, 2019) (summary order).  *Hernandez
> Gomez* was an FLSA action involving damages claims made, upon
> the defendants' default, by two plaintiffs.  One plaintiff submitted
> no affidavit, declaration, or exhibits supporting his alleged hours
> worked and compensation paid, while the other did submit a
> declaration, which Judge Fox rejected as not credible; in light of
> these issues, Judge Fox recommended that no damages be awarded
> to either plaintiff.  *See generally id*.  After the Honorable
> J. Paul Oetken, U.S.D.J., adopted Judge Fox's Report and
> Recommendation in its entirety, the plaintiffs appealed.
>
> On appeal, the Second Circuit reversed the District Court's ruling
> as to the plaintiff who *had* submitted a declaration, but affirmed
> with respect to the plaintiff who had submitted no evidence to
> support his damages claims.  *Hernandez Gomez*, 769 Fed. App'x at
> 3-4.  As to the latter plaintiff, the court noted that Judge Fox had
> directed him to submit proof of his damages, but that he "did not
> do so, instead citing only to the allegations in the complaint, which
> are not evidence and are not accepted as true as they relate to
> damages." *Id.* at 3 (citing *Au Bon Pain*, 653 F.2d at 65).  The
> Second Circuit went on to state:  "[T]he district court therefore had
> no basis from which to reasonably infer [the latter plaintiff's]
> damages and reasonably awarded him none."  *Id.*

(6/7/21 Order, at 3-4.)

    This Court not only explained to Plaintiffs the need to support their damages requests

with evidence, but also afforded them an opportunity to provide that support.  Moreover, despite

Plaintiffs' failure to make supplemental inquest submissions by the Court-ordered deadline, this

Court twice extended that deadline and expressly cautioned Plaintiffs that, in light of the lengthy

period of time that they had been given for compliance, the deadline would not be extended

further.  Ultimately, Plaintiffs' counsel had about *five and a half months* in which they could

have procured and submitted the missing affidavits or declarations, but they never submitted any.

This Court also notes that it has no basis to assume that the failure of compliance should be

placed at the feet of Faillace, or the Faillace Firm, rather than with CSM Legal, as Plaintiffs' new

counsel, given that Huey (the only attorney who has spoken in this case on behalf of CSM Legal)

himself filed a Notice of Appearance in this action back in June 2021 (*see* Dkt. 63), and as he

attempted to assure the Court, both at the November 9, 2021 conference and in his November 24,

2021 letter (Dkt. 76), that there had been "continuity" of representation in this case.

Accordingly, based on their failure to provide any evidentiary support for the damages

they seek, I hereby recommend that no damages be awarded to plaintiffs Lizardo, Luckner,

Reyes, Salas, Damas, and Ouedraogo.

### B.        The Failure of Cedano To Provide Evidence of His Job Duties

As also noted above, there was a problem with Cedano's submission, even though he

did provide a supporting Declaration.  Specifically, as set out in this Court's June 2021 Order:

> [B]oth the Amended Complaint and the Declaration submitted by
> plaintiff Cedano raise a question regarding whether Cedano is
> entitled to recover the damages he seeks under the FLSA and/or
> the NYLL.  In both places, Cedano describes his former job
> position as having been that of a "manager," and then merely
> recites boilerplate language that his "duties for Defendants
> required neither discretion nor independent judgment."  (Am.
> Compl. ¶¶ 173, 175; Faillace Decl., Ex. K (Declaration of Jose
> Ced[a]no in Support of Plaintiff's Motion for Default Judgment,
> dated Jan. 18, 2019 (Dkt. 46-11)) ¶¶ 7-8.)  The question of whether
> a "manager" should be considered exempt from statutory
> minimum-wage and overtime requirements depends on the nature
> of the work that the manager performed.  *See* 29 C.F.R.
> § 541.02(b) ("The phrase 'discretion and independent judgment'
> must be applied in the light of all the facts involved in the
> particular employment situation in which the question arises.");

> *see, e.g., Klein v. Torrey Point Grp., LLC*, 979 F. Supp. 2d 417,
> 428-29 (S.D.N.Y. 2013) (noting, in summary judgment context,
> that a manager's specific job duties – including his ability to set his
> own schedule and supervise other employees – are material
> "factors" to determining whether he may be administrative[ly]
> exempt from the FLSA overtime requirement).  Cedano has
> provided no specific information on this point . . . .

(6/7/21 Order, at 4-5 (footnote omitted).)

This Court directed Cedano to address this issue, but he failed to do so.  Absent information regarding the nature of Cedano's specific job duties, this Court simply cannot determine whether he is entitled to damages.  Accordingly, this Court finds that Cedano has not met his burden of demonstrating, to a reasonable certainty, that he is entitled to damages under the FLSA and the NYLL, and I recommend that no damages be awarded to him.

## III.   THE REMAINING PLAINTIFFS SHOULD BE <u>AWARDED DAMAGES AS SET OUT BELOW.</u>

As summarized by Judge Nathan, the claims of the remaining plaintiffs, on which they may be entitled to damages, are as follows:  Plaintiffs Cazares, Delacruz, Angel, and Robles have claims under the FLSA and NYLL for Defendants' failure to pay minimum wages; plaintiffs Cazares, Delacruz, Romano, and Angel have claims under both the FLSA and the NYLL for Defendants' failure to pay proper overtime compensation; plaintiff Cazares has a claim under the applicable New York State regulations for Defendants' failure to pay "spread of hours" compensation; plaintiff Romano has a claim under Section 196-d of the NYLL for Defendants' unlawful retention of tips; and each of these five plaintiffs have claims under Sections 195(1) and 195(3) of the NYLL for Defendants' failure to provide proper wage statements and wage notices.

A.      **Applicable Legal Standards Under the FLSA and the NYLL**

1.      **Burden of Proof in Wage Cases, Where Defendants'
Records Are Inadequate or Have Not Been Produced**

In an FLSA case, the burden falls on the plaintiff-employee to demonstrate "'that he performed work for which he was not properly compensated.'"  *Santillan v. Henao*, 822 F. Supp. 2d 284, 293-94 (E.D.N.Y. 2011) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946), *superseded on other grounds by* The Portal-to-Portal Act of 1947, 29 U.S.C. §§ 251, *et seq.*).  As noted by the Supreme Court, however, employees "'seldom keep . . . records [of hours worked] themselves,'" *id*. at 294 (alteration in original) (quoting *Anderson*, 328 U.S. at 687), and, "'even if they do, the records may be and frequently are untrustworthy,'" *id*. (quoting *Anderson*, 328 U.S. at 687).  Employers, on the other hand, have a duty to maintain such records pursuant to Section 11(c) of the FLSA, and, thus, the "easiest way for an FLSA plaintiff to discharge his or her burden of proof is, generally, to 'secur[e] the production of such records' from the employer." *Id.* (alteration in original) (quoting *Anderson*, 328 U.S. at 687).

A defaulting defendant "deprive[s] the plaintiff of the necessary employee records required by the FLSA, thus hampering [the] plaintiff's ability to prove his damages." *Id.*  As a result, where a defendant defaults, a plaintiff may meet his burden of proof "by relying on recollection alone" to establish that he "performed work for which he was improperly compensated." *Id.* at 293-94 (citing cases and finding, in default context, that plaintiff provided a "sufficient basis for [the] determination of damages" where he "submitted a sworn declaration containing information as to hours worked and rates of pay based on estimation and recollection," even where the plaintiff's submission was "general and not detailed" (internal quotation marks and citations omitted)).  "Moreover, in the absence of rebuttal by defendants . . . [the employee's] recollection and estimates of hours worked are presumed to be correct." *Id.*

15

(internal quotation marks and citations omitted); *see also Reich v. S. New England Telecomms. Corp.*, 121 F.3d 58, 67 (2d Cir. 1997) (holding that where an employer fails to produce evidence regarding the amount of work that the employee performed or evidence to negate "the reasonableness of the inference to be drawn from the employee's evidence," the court may "award damages to the employee, even though the result be only approximate" (quoting *Anderson*, 328 U.S. at 687-88)).

Under New York law, courts actually "go[] one step further and require[] that employers who fail to maintain the appropriate records 'bear the burden of proving that the complaining employee was paid wages, benefits and wage supplements.'" *Santillan*, 822 F. Supp. 2d at 294 (quoting N.Y. Lab. Law § 196-a).

### 2.     FLSA and NYLL Statutes of Limitations

Under the FLSA, the applicable statute of limitations is generally two years, except that, where the employer is found to have committed a "willful" violation of the law, the limitations period is extended to three years.  29 U.S.C. § 255(a).  Willfulness under the FLSA is found where an employer "knew or showed reckless disregard for the matter of whether [the employer's] conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988).  "[A] defendant's default, in itself, may suffice to support a finding of wil[l]fulness." *Santillan*, 822 F. Supp. 2d at 297.  The applicable limitations period for NYLL claims is six years.  N.Y. Lab. Law § 663(3).

### 3.     Damages Available Under the FLSA and the NYLL for Minimum-Wage and Overtime Pay Violations

Pursuant to the FLSA, an employee must be paid, at least, the federal statutory minimum wage for the first 40 hours that he or she worked in a given work week.  29 U.S.C. § 206(a).  Moreover, an employee is entitled to be paid for overtime hours (*i.e.*, hours exceeding 40 per

week), at a "rate not less than one and one-half times the regular rate at which [the employee] is employed." *Id*. § 207(a)(1); *see also, e.g*., *Chun Jie Yin v. Kim*, No. 07cv1236 (DLI) (JO), 2008 WL 906736, at *3 (E.D.N.Y. Apr. 1, 2008) (adopting report and recommendation and noting that "[t]he FLSA requires employers to pay their employees the statutory minimum wage as well as a premium (150 percent of the statutory minimum wage) for hours worked above 40 hours per week" (citations omitted)).   A plaintiff with a successful minimum-wage claim under the FLSA is entitled to recover damages up to, but not exceeding, these statutory amounts.  *See Santillan*, 822 F. Supp. 2d at 293.  At all times relevant to this action, the federal minimum wage was $7.25 per hour, *see* 29 U.S.C. § 206(a)(1)(C), such that the corresponding overtime pay requirement (*i.e.*, 150 percent of that rate) was $10.875 per hour.

Under the NYLL, a prevailing plaintiff is entitled to recover "the full amount of wages owed, not just the statutory minimum wage for the hours worked."  *Chun Jie Yin*, 2008 WL 906736, at *4; *see also* N.Y. Lab. Law § 198(3) ("All employees shall have the right to recover full wages . . . accrued during the six years previous to the commencing of such action.").  Where an employer has, through its prior actions, shown an intent to pay a worker at an hourly rate that is greater than the minimum wage, and then the employer simply fails to pay the worker at all, the worker is entitled to the higher rate.  *See Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 49-50 (E.D.N.Y. 2015) (explaining that, where the plaintiff "earned a higher wage than the minimum wage, the [c]ourt considered the pay rate in place of the minimum wage").  Where, however, a plaintiff-employee is not owed more than the minimum wage, then the statutory rates apply.  *See, e.g., Nana v. Le Viking LLC*, No. 17cv928 (CM) (OTW), 2019 WL 3244181, at *2-3 (S.D.N.Y. July 19, 2019) (applying statutory rates to calculate the correct unpaid wage amounts), *report and recommendation adopted*, (Dkt. 95) (Oct. 29, 2019).

For the periods relevant to this action, the statutory minimum wage in New York State was the following:  For the relevant time period prior to December 31, 2013, $7.15 per hour; as of December 31, 2013, $8.00 per hour; as of December 31, 2014, $8.75 per hour; as of December 31, 2015, $9.00 per hour.  *See* N.Y. Lab. Law § 652(1); 29 U.S.C. § 206(a)(1)(C).  For the remaining periods relevant to this action, higher minimum wages were applicable for employers situated in New York City.  For "large employers" – *i.e.*, those with 11 or more employees – the minimum wage was the following:  as of December 31, 2016, $11.00 per hour; and, as of December 31, 2017, $13.00 per hour.  *See* N.Y. Lab. Law § 652(1)(a)(i).  For "small employers" – *i.e.*, those with 10 or fewer employees – the minimum wage was the following:  as of December 31, 2016, $10.50 per hour; and, as of December 31, 2017, $12.00 per hour.  *See* N.Y. Lab. Law § 652(1)(a)(ii).  Like the FLSA, regulations promulgated under the NYLL mandate payment at one-and-one-half times the regular rate for each hour worked by an employee in excess of 40 hours per week.  *See* 12 N.Y.C.R.R. § 146-1.4.

Where an employee earns a fixed salary, "the regular hourly rate of pay, on which time and a half must be paid, is computed by dividing the salary by the number of hours which the salary is intended to compensate."  29 C.F.R. § 778.113(a).  Furthermore, courts have recognized that, under the FLSA, there is a "rebuttable presumption that a weekly salary covers only the first [40] hours, unless the parties have an alternate agreement."  *Pinovi v. FDD Enterps., Inc.*, No. 13cv2800 (GBD) (KNF), 2015 WL 4126872, at *4 (S.D.N.Y. July 8, 2015); *see also Giles v. City of N.Y.*, 41 F. Supp. 2d 308, 316-17 (S.D.N.Y. 1999) ("The fact that an employee regularly works 60 or more hours does not, without more, indicate that the employee's weekly salary was intended to include the FLSA overtime premium for all hours in excess of 40.").  Courts in this District have extended this rebuttable presumption to apply under the NYLL, as well as the

FLSA.  *See, e.g., Pinovi*, 2015 WL 4126872, at *4; *Pastor v. Alice Cleaners, Inc.*, No. 16cv7264

(JLC), 2017 WL 5625556, at *2 (S.D.N.Y. Nov. 21, 2017); *Amaya v. Superior Tile & Granite*

*Corp.*, No. 10cv4525 (PGG), 2012 WL 130425, at *9 (S.D.N.Y. Jan. 17, 2012).  "[T]he

employer can rebut the presumption by showing an employer-employee agreement that the

salary covers a different number of hours."  *Giles*, 41 F. Supp. 2d at 317.  Absent evidence that

the employer and employee understood that the fixed weekly salary included overtime hours, a

court will find that the weekly salary covered only the first 40 hours.  *See Pastor*, 2017 WL

5625556, at *2-3; *Pinovi*, 2015 WL 4126872, at *4-5; *Amaya*, 2012 WL 130425, at *9; *cf. Doo*

*Nam Yang v. ACBL Corp.*, 427 F. Supp. 2d 327, 335, 338 (S.D.N.Y. 2005) (finding that the

FLSA's rebuttable presumption had been overcome where the plaintiff conceded that his salary

covered 50 hours of work).[4]

  Although a plaintiff may be "entitled to recover unpaid minimum wages and overtime

pay under both the FLSA and the [NYLL], [he or she] may not recover twice."  *Cao v. Wu Liang*

*Ye Lexington Rest., Inc.*, No. 08cv3725 (DC), 2010 WL 4159391, at *3 (S.D.N.Y.

Sept. 30, 2010).  Instead, "[w]here a plaintiff is entitled to damages under both federal and state

wage law, a plaintiff may recover under the statute which provides the greatest amount of

damages."  *Wicaksono v. XYZ 48 Corp.*, No. 10cv3635 (LAK) (JCF), 2011 WL 2022644, at *3

---

[4] Provided adequate notice is given, both the FLSA and NYLL permit an employer to take a "tip credit" for a service employee and thereby to pay the employee at a lower minimum wage, as long as the employee's total wages, including tips, are equal to or greater than the minimum wage for non-tipped workers.  *See* 29 U.S.C.A. § 203(m)(2)(A); 12 N.Y.C.R.R. §§ 146-1.3, 146-2.2.  Where, however, the service employee spends a substantial amount of his or her day performing non-tipped duties, the employer may not take a tip credit for that day. *Salinas v. Starjem Rest. Corp.*, 123 F. Supp. 3d 442, 470 (S.D.N.Y. 2015); *see also* 12 N.Y.C.R.R. § 146-2.9 (an employer may not take a tip credit for an employee for any day he or she spends two hours or more, or more than 20 percent of his or her shift – whichever is less – working a non-tipped occupation).

(S.D.N.Y. May 2, 2011) (internal quotation marks and citation omitted), *report and recommendation adopted*, 2011 WL 2038973 (May 24, 2011).  Accordingly, when calculating minimum-wage damages, the higher of either the federal or the New York minimum wage should be used for any period covered by both statutes.  *Id*.

### 4.   <u>Spread-of-Hours Pay Pursuant to the NYLL</u>

Under the NYLL (but not the FLSA), in addition to receiving damages for unpaid regular wages and overtime, an employee is entitled to receive "spread-of-hours" pay, which is "one hour's pay at the basic minimum hourly wage rate" for any work day that lasts longer than 10 hours.  12 N.Y.C.R.R. § 142-2.4(a); *see also* N.Y. Lab. Law §§ 650, *et seq.*  "Spread-of-hours compensation is calculated by multiplying the minimum wage by the number of days an employee worked more than [10] hours."  *See* 12 N.Y.C.R.R. § 146-1.6.

Typically, "[o]nly employees making the minimum wage rate, or less, are eligible for spread-of-hours compensation."  *Hernandez v. Delta Deli Mkt. Inc.*, No. 18-CV-00375 (ARR) (RER), 2019 WL 643735, at *7 (E.D.N.Y. Feb. 12, 2019); *see also Mei Chun Poon v. Apple NYC Corp.*, No. 17cv9647 (RA) (GWG), 2019 WL 75674, at *7 (S.D.N.Y. Jan. 2, 2019). "But[,] under Section 146.1.6(d) of New York Codes, Rules and Regulations all employees in restaurants and all-year hotels are entitled to spread-of-hours pay regardless of their regular pay rate."  *Torres v. 894 Deklab Pizza Corp.*, No. 19-CV-5750 (AMD) (SMG), 2020 WL 8768258, at *6 (E.D.N.Y. Dec. 28, 2020) (internal quotation marks omitted) (citing, *inter alia*, 12 N.Y.C.R.R. § 146-1.6(d)).  Under the regulations, the term "restaurant" means "any eating or drinking place where food or beverages for human consumption on the premises are offered." 12 C.R.R.-N.Y. § 480.4.  *See, e.g., Brito v. Marina's Bakery Corp.*, No. 19-CV-00828 (KAM)

(MMH), 2022 WL 875099, at *1-2, 15-16 (E.D.N.Y. Mar. 24, 2022) (applying restaurant definition to defendants' bakery).

### 5.     <u>Unlawful Retention of Gratuities Pursuant to the NYLL</u>

Pursuant to Section 196-d of the NYLL, "[n]o employer . . . shall demand or accept, directly or indirectly, any part of the gratuities, received by an employee, or retain any part of a gratuity or of any charge purported to be a gratuity for an employee." *In re Domino's Pizza Inc.*, No. 16cv6274 (AJN), 2018 WL 1587593, at *5 (S.D.N.Y. Mar. 27, 2018) (quoting N.Y. Lab. Law § 196-d); *see also* N.Y. Comp. Codes R. & Regs. tit. 12, § 146-2.18(a) ("A charge purported to be a gratuity must be distributed in full as gratuities to the service employees or food service workers who provided the service.").

### 6.     <u>Liquidated Damages Pursuant to the FLSA and the NYLL</u>

In addition to allowing recovery for unpaid minimum wages and overtime compensation, the FLSA provides for the recovery of liquidated damages.  *See* 29 U.S.C. § 216(b).  Under the statute, a plaintiff is entitled to recover liquidated damages in an amount equal to the amount of unpaid wages and overtime compensation that the plaintiff was improperly denied, unless the employer demonstrates that it acted in good faith and had a reasonable basis for believing that it had not violated the FLSA.  *See id.* (providing that plaintiff-employees who prevail under either Section 206 or 207 of the FLSA are entitled to recover "the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and . . . an additional equal amount as liquidated damages"); *see also* 29 U.S.C. § 260 (mandating that an employer pay liquidated damages unless the employer demonstrates that it was acting in "good faith" and "had reasonable grounds for believing" that he was not acting in violation of the FLSA); *Galeana v.*

*Lemongrass on Broadway Corp.*, 120 F. Supp. 3d 306, 317 (S.D.N.Y. 2014) (adopting report and recommendation).

"As the Second Circuit has observed, 'the employer bears the burden of establishing, by plain and substantial evidence, subjective good faith and objective reasonableness. . . .  The burden, under 29 U.S.C. § 260, is a difficult one to meet, however, and double damages are the norm, single damages the exception.'"  *Galeana*, 120 F. Supp. 3d at 317 (quoting *Reich*, 121 F.3d at 71 (other internal quotation marks and citations omitted)); *Cao*, 2010 WL 4159391, at *5; *Yu G. Ke*, 595 F. Supp. 2d at 261; *see also* 29 U.S.C. § 260.

The NYLL also provides for the recovery of liquidated damages at a rate of 100 percent of unpaid wages, including unpaid spread-of-hours compensation, and compensation unlawfully deducted or withheld.  *See* N.Y. Lab. Law § 663(1); *Castillo v. Zishan, Inc.*, No. 16cv6166 (JGK) (HBP), 2018 WL 2084142, at *6 (S.D.N.Y. Apr. 6, 2018), *report and recommendation adopted*, 2018 WL 2081853 (May 2, 2018); *see also Greathouse v. JHS Sec. Inc.*, No. 11cv7845 (PAE) (GWG), 2012 WL 5185591, at *3 (S.D.N.Y. Oct. 19, 2012) (the calculation for liquidated damages under the NYLL must include compensation for unlawful wage deductions), *vacated and remanded on other grounds*, 784 F.3d 105 (2d Cir. 2015).  Although courts within this Circuit were once split on the question of whether a plaintiff could recover liquidated damages under both the FLSA and the NYLL, *see Chowdhury v. Hamza Express Food Corp.*, 666 F. App'x 59, 60 (2d Cir. 2016) (summary order), the Second Circuit has since clarified that double recovery is not permitted, *id.*; *Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018) (interpreting the NYLL and FLSA as "not allowing duplicative liquidated damages for the same course of conduct," and holding that "plaintiff should receive the larger of the two liquidated damages awards").

7. **New York State Wage Notice Requirements**

a. **Wage Statements**

Pursuant to New York's Wage Theft Prevention Act ("WTPA"), an amendment to the

NYLL that was made effective as of April 9, 2011, employers are required to

> 'furnish each employee with a statement with every payment of
> wages, listing the following' information: (1) the dates of work
> covered by that payment of wages; (2) the employee's name;
> (3) the employer's name, address, and telephone number;
> (4) the rate or rates of pay and basis thereof; (5) gross wages;
> (6) deductions; (7) allowances, if any, claimed as part of the
> minimum wage; and (8) net wages.

*Salinas*, 123 F. Supp. 3d at 475 (quoting N.Y. Lab. Law § 195(3)).

For employer wage-statement violations occurring after February 27, 2015, the WTPA

entitles employees to recover statutory damages of "[$250.00] for each work day that the

violations occurred . . . [,] but not to exceed a total of [$5,000.00]."  N.Y. Lab. Law § 198(1-d).

Liquidated damages are not available to augment the statutory damages that may be

awarded under the WPTA for wage-statement violations.  *Java v. El Aguila Bar Rest. Corp.*,

No. 16cv6691 (JLC), 2018 WL 1953186, at *13 n.18 (S.D.N.Y. Apr. 25, 2018).

b. **Wage Notices**

In addition, the WTPA requires employers to provide a written wage notice "at the time

of hiring."  N.Y. Lab. Law § 195(1)(a).  The wage notice is required to be "in English and in the

language identified by each employee as the primary language of such employee," *id.*, and must

contain the following information:

> (1) the rate or rates of pay and basis thereof; (2) allowances, if any,
> claimed as part of the minimum wage, including tip, meal, or
> lodging allowances; (3) the regular pay day designated by the
> employer; (4) the employer's name; (5) any 'doing business as'
> names used by the employer; (6) the physical address of the
> employer's main office or principal place of business, and a

> mailing address if different; (7) the employer's telephone number;
> and (8) such other information as the commissioner deems material
> and necessary.

*Salinas*, 123 F. Supp. 3d at 474 (footnote omitted) (quoting N.Y. Lab. Law § 195(1)(a)).

For employer violations of this requirement occurring after February 27, 2015, the WTPA entitles employees to recover statutory damages of "[$50.00] for each work day that the violations occurred . . . [,] but not to exceed a total of [$5,000.00]."  N.Y. Lab. Law § 198(1-b).

As with wage-statement violations, liquidated damages may not be awarded with respect to wage-notice violations under the WTPA.  *Java*, 2018 WL 1953186, at *13 n.18.

### 8.    Prejudgment Interest

Generally, "[t]he decision to award prejudgment interest is discretionary, and is based on the need to fully compensate the wronged party, [the] fairness of the award, and the remedial purpose of the statute involved."  *Najnin v. Dollar Mountain, Inc.*, No. 14cv5758, 2015 WL 6125436, at *3 (S.D.N.Y. Sept. 25, 2015).  Given that FLSA liquidated damages serve a compensatory, rather than punitive, purpose, "there is no need to employ pre-judgment interest to restore Plaintiffs to a position they would have otherwise enjoyed absent the wage-protection violation."  *Cabrera v. 1560 Chirp Corp.*, No. 15cv8194 (TPG) (DF), 2017 WL 1289349, at *8 (S.D.N.Y. Mar. 6, 2017) (internal quotation marks and citation omitted), *report and recommendation adopted*, 2017 WL 1314123 (Apr. 6, 2017).  Thus, a plaintiff who recovers liquidated damages under the FLSA is not also entitled to prejudgment interest on his or her FLSA damages.  *See, e.g.*, *id.*; *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 48 (E.D.N.Y. 2015) ("'It is well settled that in an action for violations of the [FLSA] prejudgment interest may not be awarded in addition to liquidated damages.'" (quoting *Begum v. Ariba Disc., Inc.*, No. 12cv6620 (DLC) (KNF), 2015 WL 223780, at *3 (S.D.N.Y. Jan. 16, 2015))).  As a

result, "courts do not award statutory prejudgment interest on any portion of the recovery for which liquidated damages were awarded under the FLSA." *Andrade v. 168 First Ave Rest. Ltd.*, No. 14cv8268 (JPO) (AJP), 2016 WL 3141567, at *9 n.7 (S.D.N.Y. June 3, 2016), *report and recommendation adopted*, 2016 WL 3948101 (July 19, 2016).

Based on a provision added to the NYLL in 2011, however, a plaintiff who recovers liquidated damages under the NYLL *is* also entitled to prejudgment interest. *See Hernandez v. Jrpac Inc.*, No. 14cv4176 (PAE), 2016 WL 3248493, at *35 (S.D.N.Y. June 9, 2016) (noting that, under the NYLL, a plaintiff may receive both an "award of prejudgment interest alongside a liquidated damages award" (citing N.Y. Lab. Law § 198(1-a))); *see also Castillo v. RV Transp., Inc.*, No. 15cv0527 (LGS), 2016 WL 1417848, at *3 (S.D.N.Y. Apr. 11, 2016). Under the state law, though, "[p]rejudgment interest is calculated . . . [only] on the unpaid wages due under the NYLL, not on the liquidated damages awarded under the state law." *Mejia v. East Manor USA Inc.*, No. 10cv4313 (NG), 2013 WL 3023505, at *8 n.11 (E.D.N.Y. Apr. 19, 2013) (citation omitted), *report and recommendation adopted*, 2013 WL 2152176 (May 17, 2013). Prejudgment interest is also not available on awards made for wage-statement or wage-notice violations. *See Gamero v. Koodo Sushi Corp.*, 272 F. Supp. 3d 481, 515 (S.D.N.Y. 2017).

"Pursuant to [New York] state law, a successful plaintiff may receive prejudgment interest at a rate of nine percent per year." *Najnin*, 2015 WL 6125436, at *4; *see also* N.Y. C.P.L.R. §§ 5001, 5004. As to the date from which interest should be found to run, "Section 5001(b) sets forth two methods of calculating prejudgment interest[]":

> First, interest may be calculated from 'the earliest ascertainable date the cause of action existed,' N.Y. C.P.L.R. § 5001(b). However, '[w]here . . . damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date.' *Id.*

*Alvarez v. 215 N. Ave. Corp.*, No. 13cv7049 (NSR) (PED), 2015 WL 3855285, at *3 (S.D.N.Y. June 19, 2015) (adopting report and recommendation).  It is within the court's "'wide discretion'" to "'determin[e] a reasonable date from which to award prejudgment interest.'"  *Id.* (quoting *Conway v. Icahn & Co.,* 16 F.3d 504, 512 (2d Cir. 1994)).

     B.    <u>Damages That Should Be Awarded in This Case</u>

     Before considering the specific damages claims of plaintiffs Cazares, Delacruz, Romano, Angel, and Robles, this Court notes, as a threshold matter, that it finds these plaintiffs' submissions to be sufficient to meet their burden of proof to establish their damages to a reasonable certainty, such that a hearing on damages is not required.  *See Fustok*, 873 F.2d at 40 (noting that the district court has the discretion to determine whether a hearing is necessary).  As noted above, in the context of a default, where defendants have neither provided any employment records, nor otherwise rebutted plaintiffs' damages claims, it is sufficient for plaintiffs to rely on their own recollections to establish the hours they worked and the rates at which they should have been paid.  *See Santillan*, 822 F. Supp. 2d at 294.  Here, the five remaining plaintiffs have submitted declarations, made under penalty of perjury, setting out their recollections regarding the hours they worked and what they were paid for that work.  This Court finds that these declarations, read in conjunction with the well-pleaded allegations of the First Amended Complaint, contain adequate information to allow for a reasonable assessment of damages.

     This Court, however, does not find it proper to rely on the chart submitted by Plaintiffs' counsel to show how, in counsel's view, each plaintiff's damages should be calculated.  (*See* Faillace Decl., Ex. M ("Damages Chart") (Dkt. 46-13).)  The Damages Chart purports to detail the amounts these plaintiffs were actually paid per week (referred to as their "Credited Weekly

26

Pay"), the amounts they should have been paid under the law (referred to as their "Lawful Weekly Pay"), and the difference between the two (referred to as the "Underpayment Per Week"). (*Id.*) Counsel has then calculated each plaintiff's total unpaid wages (including unpaid overtime, where applicable) by multiplying the number of weeks in the pay period at issue by the amount that each plaintiff was underpaid per week. (*Id.*) The Damages Chart also details certain additional amounts that these plaintiffs are seeking, including unpaid spread-of-hours pay, illegal deductions, liquidated damages, statutory damages for wage-notice and wage-statement violations, and prejudgment interest. (*See id.*).

Having assessed the proffered Damages Chart, this Court has found that it contains multiple errors. For one thing, as observed by Judge Nathan, certain of the calculations therein (particularly, as relevant herein, for plaintiffs Cazares and Romano) are based on claimed violations that would have occurred outside the governing statutes of limitations. (*See* 5/31/20 Order, at 14.) As another example, in calculating plaintiff Cazares's unpaid spread-of-hours compensation (a state-law claim), the Damages Chart seems to erroneously use the then-applicable federal minimum-wage rate. (*See id.*) The Damages Chart also assumes that, for both 2017 and 2018, Defendants were required to pay their employees at the higher minimum-wage rates that then applied, in New York, to "large employers," *i.e.*, businesses that employed at least 11 workers, *see* N.Y. Lab. Law § 652(1)(a)(i), but Plaintiffs have nowhere alleged that, in 2017, Defendants had this many employees. Plaintiffs have implicitly pleaded this with respect to 2018, when, based on their individual allegations, at least 11 of the named Plaintiffs allegedly worked for Defendants. For the period from December 31, 2016 through December 31, 2017, though, Plaintiffs' allegations are insufficient to give rise to an inference that Defendants met the "large employer" criteria, and thus, for that year, none of the Plaintiffs are entitled to damages

based on the higher New York City rates. *See, e.g., Thompson v. Hyun Suk Park,* No. 18cv0006 (AMD) (ST), 2020 WL 5822455, at *7 (E.D.N.Y. Sept. 1, 2020) (where only two plaintiffs were named in the action, finding that the "small employer" minimum wage rates would apply because plaintiffs failed to plead that the defendants were large employers, and it was plaintiffs' burden to establish damages to a reasonable certainty), *report and recommendation adopted*, 2020 WL 5820547 (Sept. 30, 2020); *see also, e.g., Ramos v. Greenwich Catering Corp.*, No. 18cv04790 (VB)(SN), 2020 WL 619928, at *6 (S.D.N.Y. Jan. 15, 2020) (same).[5]  Finally, this Court notes that some of the calculations contained in the proffered Damages Chart are, in various respects, at odds with the factual information contained in the submitted declarations and alleged in the Amended Complaint.[6]  For these reasons, this Court will make its own calculations of plaintiffs' damages, in accordance with the presented evidence and the applicable law.[7]

---

[5] *But see Sanchez v. Jyp Foods, Inc.*, No. 16cv4472 (JLC), 2018 WL 4502008, at *9 n.13 (S.D.N.Y. Sept. 20, 2018) (even though plaintiffs had not provided information regarding the number of workers employed by defendants, giving plaintiffs the benefit of the doubt on this issue in light of defendants' default, and applying the minimum-wage rate for larger employers as requested by plaintiffs).

[6] For example, the Damages Chart calculates "illegal deductions" for Cazares, even though none of the allegations in either the First Amended Complaint or in Cazares's Declaration would support a claim for unlawful deductions from wages.

[7] The court may remedy counsel's computational errors on its own accord, even where those corrections could result in an increase to a portion of damages sought by a plaintiff.  *See Elisama v. Ghzali Gourmet Deli, Inc.*, No. 14cv8333 (PGG) (DF), 2016 WL 11523365, at *13 (S.D.N.Y. Nov. 7, 2016), (correcting counsel's computational errors in damages submissions made by the Faillace Firm), *report and recommendation adopted,* 2018 WL 4908106 (S.D.N.Y. Oct. 10, 2018); *see also Trustees of Local 813 I.B.T. Ins. Trust Fund v. Amanda Cartin Corp.*, No. 07cv656 (FB) (KAM), 2007 WL 4324019, at *2 n.4 (E.D.N.Y. Dec. 7, 2007) (adopting report and recommendation, which found it permissible, in the default-judgment context, to correct a miscalculation on the plaintiff's part, and, for that reason, to award more in damages than the amount plaintiff requested); *Med. Econ. Co. v. Healthexchange, Inc.*, No. 01cv11262 (KMW) (AJP), 2003 WL22346391, at *2 (S.D.N.Y. Oct. 15, 2003) ("Plaintiff . . . should not lose out because of such a calculation error by its counsel." (citation omitted)), *report and recommendation adopted* (Text Order, Nov. 24, 2003 (Dkt. 34)).

      1.     **Cazares**

Although Cazares alleges that she began working for Defendants in 2003 (Cazares Decl.

¶ 6; Am. Compl. ¶ 22), Judge Nathan has determined that "Plaintiffs' claims are timely with

respect to any FLSA violations that occurred on or after June 30, 2015 and any NYLL violations

that occurred on or after June 30, 2012." (5/31/20 Order, at 5.) Therefore, Cazares can only be

entitled to damages for wage-and-hour violations going back to June 30, 2012.

      a.     **Unpaid Minimum Wages and Overtime Compensation**

Cazares claims that, within the limitations period, she was denied both minimum wages

and overtime compensation. (*See* Cazares Decl. ¶ 22.) In her Declaration, she estimates that, as

a cook at Defendants' bagel shop, she worked the following hours:

      (1)     For the period from approximately June 30, 2012 through January 2015[8] she worked about 11 hours per day (from about 6:00 a.m. to 5:00 p.m.), six days per week (Fridays through Wednesdays), for a total of 66 hours per week;

      (2)     For the period from approximately February 2015 through December 2017, she worked about nine hours per day (from about 6:00 a.m. to 3:00 p.m.), six days per week (Fridays through Wednesdays), for a total of 54 hours per week;

      (3)     For the period from approximately January 2018 through May 2, 2018, she worked about nine and one-half hours per day (from about 5:30 a.m. to 3:00 p.m.), six days per week (Fridays through Wednesdays), for a total of 57 hours per week; and

---

[8] Plaintiffs repeatedly use awkward and imprecise phrasing to describe the approximate periods of their employment. In particular, Plaintiffs use the construction exemplified by this quote from Cazares's Declaration: "From approximately June 2012 until on or about January 2015, I worked . . . ." (Cazares Decl. ¶ 10.) Based on the totality of Plaintiffs' submissions, this Court construes this phrase to mean that Cazares worked from approximately June 1, 2012 *through* the month of January 2015 (*i.e.*, through January 31, 2015), and will apply a similar construction consistently, throughout this Report and Recommendation.

(4)     For the period from approximately May 21, 2018 through
June 17, 2018, she worked about seven and one-half hours
per day (from about 5:30 a.m. to 1:00 p.m.), four days per
week (Mondays, Wednesdays, Fridays, and Saturdays), and
about nine and one-half hours per day (from about
5:30 a.m. to 3:00 p.m.), two days per week (Tuesdays and
Sundays), for a total of 49 hours per week.[9]

(*Id.* ¶¶ 10-13; *see* Am. Compl. ¶¶ 66-69.)  Cazares does not state in her Declaration that she was

afforded any breaks during her work day, and, according to the Amended Complaint, she had

none.  (*See* Am. Compl. ¶ 77 ("Defendants never granted Plaintiff Cazares any breaks of meal

periods of any kind.").)

As for her pay during the four periods set out above, Cazares states that, for the first of

those periods, she was paid a fixed salary of $300 per week; for the second period, she was paid

$8.75 per hour; and, for the third and fourth periods, she was paid $13.00 per hour, except for

one week in June 2018, when she was not paid at all.  (Cazares Decl. ¶¶ 15-18; *see* Am. Compl.

¶¶ 71-74.)

Taking the four periods in turn, this Court turns first to the period from approximately

June 30, 2012 through January 2015 (a period for which Cazares's claims would fall outside the

FLSA statute of limitations, but for which she has viable NYLL claims).  In the absence of any

evidence that, for this period, Cazares and Defendants had an agreement that her fixed weekly

salary of $300 per week would cover the full 66 hours that she worked each week, this Court

presumes that her weekly salary covered only the first 40 hours of work per week.  *See Paster*,

2017 WL 5625556, at *2-3; *Pinovi*, 2015 WL 4126872, at *4-5; *Amaya*, 2012 WL 130425, at *9.

---

[9] While her Declaration, the Amended Complaint, and the submitted Damages Chart all
appear to suggest that, for this period, Cazares worked 53 hours per week, the number of hours
that Cazares says she worked per day actually adds up to 49 hours per week.

This means that, during this period, she was paid at a base hourly rate of $7.50 (*i.e.*, $300/week ÷ 40 hours), which was more than the New York State minimum wage rate of $7.15 per hour that was in effect until December 31, 2013, but less than the state minimum wage rates that applied thereafter.[10]  Moreover, for this period, Cazares worked 26 hours per week of overtime, for which she was entitled to be paid at 150 percent of her base wage rate.  Accordingly, for this first period, Cazares is owed the following unpaid wages, under the NYLL:

| Periods worked | Unpaid Minimum Wages (first 40 hrs/wk) | | | | | | Unpaid Overtime | | | |
| | No. of wks | Base hourly rate | NY min wage | Under-paym't per hr | Under-paym't per wk | Total unpaid min wages | O/T rate | Hours O/T per wk | Under-paym't per wk | Total unpaid O/T |
|---|---|---|---|---|---|---|---|---|---|---|
| 6/30/12-12/30/13 | 78.29 | $7.50/hr | $7.15/hr | – | – | – | $11.25/hr | 26 | $292.50 | $22,899.83 |
| 12/31/13-12/30/14 | 52 | $7.50/hr | $8.00/hr | $ .50/hr | $20.00/wk | $1,040.00 | $12.00/hr | 26 | $312.00 | $16,224.00 |
| 12/31/14-1/31/15 | 4 | $7.50/hr | $8.75/hr | $1.25/hr | $50.00/wk | $200.00 | $13.125/hr | 26 | $341.25 | $1,365.00 |
| | | | | | Total: $1,240.00 | | | | Total: $40,488.83 | |

For the second period described above (from approximately February 2015 through December 2017), Cazares asserts that she worked 54 hours per week, and was paid on an hourly basis, at the rate of $8.75 per hour.  This rate was higher than the FLSA minimum wage of $7.25 per hour, and equal to the New York State minimum wage that was in effect from December 31, 2014 through December 30, 2015.  It was lower, though, than the state minimum wage that was in effect thereafter.  For the period from December 31, 2015 though December 30, 2016, the applicable New York State minimum wage was $9.00 per hour, and, for "small employers," the applicable New York City minimum wage was $10.50 per hour starting on December 31, 2016,

---

[10] For any periods covered by both the FLSA and the NYLL, this Court will apply the minimum wages available under the NYLL, as state law would afford Cazares the greater relief.  *See Wicaksono*, 2011 WL 2022644, at *3.  This Court will do the same for the other plaintiffs who are entitled to damages, for the same reason.

and $12.00 per hour starting on December 31, 2017.  With respect to the 14 hours that she

worked each week, in excess of 40 hours, Cazares is entitled to an additional 50 percent of her

regular base rate (or the 50 percent of the minimum wage rate, if higher).  Accordingly, Cazares

is owed the following unpaid wages, under the NYLL, for this second period of time:

| Periods worked | Unpaid Minimum Wages (first 40 hrs/wk) | | | | | | Unpaid Overtime | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | No. of wks | Base hourly rate | NY min wage | Under-paym't per hr | Under-paym't per wk | Total unpaid min wages | O/T under-paym't per hr | Hours O/T per wk | Under-paym't per wk | Total Unpaid O/T |
| 2/1/15-12/30/15 | 47.43 | $8.75/hr | $8.75/hr | – | – | – | $4.375/hr | 14 | $61.25 | $2,905.09 |
| 12/31/15-12/30/16 | 52 | $8.75/hr | $9.00/hr | $ .25/hr | $10.00/wk | $520.00 | $4.50/hr | 14 | $63.00 | $3,276.00 |
| 12/31/16-12/30/17 | 52 | $8.75/hr | 10.50/hr | $1.75/hr | $70.00/wk | $3,640.00 | $5.25/hr | 14 | $73.50 | $3,822.00 |
| 12/31/17 | 1 day | $8.75/hr | $12.00/hr small employer | $3.25/hr | $26.00 (one day) | $26.00 | $6.00/hr | 2.8 (one day) | -- | $16.80 |
| | | | | | Total: $4,186.00 | | | | Total: $10,019.89 | |

For the third period described above (from approximately January 2018 through May 2,

2018), Cazares asserts that worked 57 hours per week, and was paid on an hourly basis, at the

rate of $13.00 per hour.  This rate was higher than the FLSA minimum wage of $7.25 per hour,

and equal to the New York City minimum wage rate for "large employers."

And, for the fourth period described above (from approximately May 21, 2018 through

June 17, 2018), Cazares asserts that she worked 49 hours per week, and was again paid at the

hourly rate of $13.00 (which was again equal to the New York City minimum wage rate for

"large employers"), except for one week in June, when she was not paid at all.  For ease of

calculation, this Court assumes that the week in which Cazares was not paid was the last week of

this period.

Based on the above, Cazares is owed the following unpaid wages, under the NYLL, for these third and fourth periods of time:

| Periods worked | Unpaid Minimum Wages (first 40 hrs/wk) | | | | | | Unpaid Overtime | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | No. of wks | Base hourly rate | NY min wage | Under-paym't per hr | Under-paym't per wk | Total unpaid min wages | O/T under-paym't per hr | Hours O/T per wk | Under-paym't per wk | Total unpaid O/T |
| 1/1/18-5/2/18 | 17.29 | $13.00/hr | $13.00/hr large employer | – | – | – | $6.50/hr | 17 | $110.50 | $1,910.55 |
| 5/21/18-6/10/18 | 2.86 | $13.00/hr | $13.00/hr large employer | – | – | – | $6.50/hr | 9 | $58.50 | $167.31 |
| 6/11/18-6/17/18 | 1 | Not paid | $13.00/hr large employer | $13.00/hr | $520/wk | $520.00 | $19.50/hr | 9 | $175.50 | $175.50 |
| | | | | | Total: $520.00 | | | | Total: $2,253.36 | |

Adding the amounts shown in the above charts, Cazares should therefore be awarded **$5,946.00** in unpaid minimum wages (representing $1,240.00 + $4,186.00 + $520.00), and **$52,762.08** in unpaid overtime compensation (representing $40,488.83 + $10,019.89 + $2,253.36).

### b.   Spread-of-Hours Compensation

As discussed above, Cazares asserts that, from June 30, 2012 to January 31, 2015, she worked 11-hour shifts, six days per week.  (*See* Cazares Decl. ¶ 10.)  Therefore, under the NYLL, Cazares is entitled to one additional hour's pay at the statutory minimum wage rate or her regular pay rate (if higher than the state minimum wage) for each day that she worked during that period.  *See* 12 N.Y.C.R.R. § 142-2.4; *see also Torres*, 2020 WL 8768258, at *6 (under Section 146.1.6(d), all restaurant employees are entitled to spread-of-hours pay regardless of their regular pay rate).  Given the minimum wage increases throughout Cazares's employment, her unpaid spread-of-hours compensation must be calculated separately for each period with a differing effective minimum wage.

For the period from June 30, 2012 to December 30, 2013, New York's minimum wage rate was $7.15 per hour, N.Y. Lab. Law § 652(1); 29 U.S.C. § 206(a)(1)(C), and Cazares claims to have been paid $750.00 per hour, which was higher than that rate. Thus, using the relevant calculation for the number of weeks she worked during that period,[11] Cazares was underpaid $3,523.05 ($7.50/day x 6 days/week x 78.29 weeks) during this time. For the period from December 31, 2013 to December 30, 2014, New York's minimum wage rate was $8.00 per hour. *Id.* Thus, as to the 52 weeks she worked during that period, Cazares was underpaid $2,496.00 ($8.00/day x 6 days/week x 52 weeks). Finally, for the period from December 31, 2014 to January 31, 2015, New York's minimum wage rate was $8.75 per hour. *Id.* Thus, as to the 4 weeks she worked during that period, Cazares was underpaid $210.00 ($8.75/day x 6 days/week x 4 weeks). Therefore, Cazares is entitled to recover a total of **$6,229.05** in unpaid spread-of-hours damages.

### c.   **Liquidated Damages**

As discussed above, both the FLSA and the NYLL also provide for the recovery of liquidated damages. Indeed, both statutes mandate that the court award liquidated damages to a prevailing plaintiff, unless the defendant employer demonstrates that it acted in good faith or had a reasonable basis to believe that it was acting in compliance with the law. (*See* Discussion, *supra*, at Section I(H).) Here, given their default, Defendants have not met their burden of proving that they acted in good faith, *see Galeana*, 120 F. Supp 3d at 317, and thus liquidated damages are available under the provisions of both statutes, 29 U.S.C. § 216(b); N.Y. Lab. Law § 198(1-a).

---

[11] This estimate does not account for the approximate four weeks prior to June 30, 2012 which are included on the Damages Chart, but are outsied the NYLL's six-year statute of limitations. (*See supra*, at n.8.)

Under New York law, Cazares is entitled to recover liquidated damages in an amount equal to 100 percent of her unpaid wages, for the entire period covered by her claims, to the extent those claims fall within the applicable statutes of limitations.  *See* N.Y. Lab. Law § 663(1).  Cazares is due **$5,946.00** ($1,240.00 + $4,186.00 + $520.00) in unpaid minimum wages, **$52,762.08** ($40,488.83 + $10,019.89 + $2,253.36) in unpaid overtime compensation, and **$6,229.05** in unpaid spread-of-hours compensation.  Therefore, in total, Cazares is entitled to a total of **$64,937.13** in liquidated damages under the NYLL.

### d.   **Statutory Damages**

Cazares further contends that, throughout the duration of her employment, Defendants failed to provide her with wage statements and wage notices in violation of the WTPA, and that she is therefore entitled to additional statutory damages pursuant to the NYLL.  (*See* Cazares Decl. ¶¶ 19-21; *see also* Am. Compl. ¶¶ 79-81.)  In the Amended Complaint, each of the named Plaintiffs – including Cazares – seeks $5,000.00 for Defendants' failure to provide wage statements, and $5,000.00 for their failure to provide wage notices.  (Am. Compl. ¶¶ 323-28.)

As laid out above, the WTPA imposes statutory damages of $250.00 per work day, capped at $5,000.00, for the failure to provide employees with compliant wage statements, where the violations occurred after February 27, 2015.  (*See* Discussion, *supra*, at Section I(I)(1); *see also* N.Y. Lab. Law § 198(1-d).)  Thus, accepting Cazares's claim that she was employed by Defendants for more than 20 days between February 27, 2015 and June 17, 2018, and that she never received a wage statement from Defendants (Cazares Decl. ¶ 19), she is entitled to the maximum $5,000.00 in statutory damages for these wage-statement violations.

The WTPA also imposes statutory damages of $50.00 per work day, again capped at $5,000.00, for the failure to provide employees with compliant wage notices, where the

violations occurred after February 27, 2015.  (*See* Discussion, *supra*, at Section I(I)(2); *see also*

N.Y. Lab. Law § 198(1-b).)  Accepting Cazares's claim that she did not receive a wage notice

for the entire duration of her employment (Cazares Decl. ¶ 21), which included more than 100

days after February 27, 2015, she is also entitled to the maximum of $5,000.00 in statutory

damages for wage-notice violations.  *See Perez*, 2015 WL 1881080, at *4; *Cuzco*, 2014 WL

2210615, at *4.

This Court therefore recommends that Cazares be awarded the requested **$10,000.00** in

statutory damages for Defendants' failure to provide her with both wage statements and wage

notices during the time periods for which such damages are available.

## e.   **Prejudgment Interest**

As noted above, the NYLL provides that a plaintiff may recover both liquidated damages

and prejudgment interest on his or her underlying damages.  *See Hernandez*, 2016 WL 3248493,

at *35; *Castillo*, 2016 WL 1417848, at *3.  While "courts do not award statutory prejudgment

interest on any portion of the recovery for which liquidated damages were awarded under the

FLSA," *Andrade*, 2016 WL 3141567, at *9 n.7, where, as here, a plaintiff is entitled to liquidated

damages only pursuant to the NYLL, the plaintiff is "eligible for an award of prejudgment

interest on the full . . . damages arising out of his [or her] . . . wage claims," *Xochimitl v. Pita*

*Grill of Hell's Kitchen*, *Inc.,* No. 14cv10234 (JGK) (JLC), 2016 WL 4704917, at *18 (S.D.N.Y.

Sept. 8, 2016), *report and recommendation adopted*, 2016 WL 6879258 (Nov. 21, 2016).  As set

out above, prejudgment interest on damages under the NYLL is awarded at a rate of nine percent

per annum, *Najnin*, 2015 WL 6125436, at *4; N.Y.C.P.L.R. § 5004, and such interest may be

calculated from either the "earliest ascertainable date the cause of action existed" or "from a

single reasonable intermediate date," where damages were incurred at various times,

N.Y.C.P.L.R. § 5001(b).

Cazares is entitled to prejudgment interest on her damages for unpaid minimum wages, unpaid overtime, and unpaid spread-of-hours pay (but not on her statutory damages for wage-statement and wage-notice violations). As each of the claims for which these damages are sought accrued at different times, interest should be calculated separately for each. Further, as Cazares's damages accrued variably due to the increases in the applicable minimum wage, this Court calculates prejudgment interest separately for each time period as to which a particular minimum-wage requirement applied. *Cf. Said v. SBS Elecs., Inc.*, No. 08cv3067 (RJD) (JO), 2010 WL 1265186, at *9 (E.D.N.Y. Feb. 24, 2010) (calculating interest on entire employment period, as "the amounts owed accrued at an essentially regular rate"), *report and recommendation adopted as modified on other grounds*, 2010 WL 1287080 (Mar. 31, 2010).

| From | To | Principal (Unpaid Minimum Wage Damages) | Interest Calculation (Principal x .09 x Years from Midpoint Date to 3/4/2019) | Interest Owed |
|---|---|---|---|---|
| 12/31/2013 | 12/30/2014 | $1,040.00 | $1,040.00 x .09 x (1,707/365) | $437.74 |
| 12/31/2014 | 1/31/2015 | $200.00 | $200.00 x .09 x (1,509/365) | $74.42 |
| 12/31/2015 | 12/30/2016 | $520.00 | $520.00 x .09 x (977/365) | $125.27 |
| 12/31/2016 | 12/31/2017 | $3,640.00 | $3,640.00 x .09 x (611/365) | $548.39 |
| 6/11/2018 | 6/17/2018 | $520.00 | $520.00 x .09 x (263/365) | $33.72 |
| | | | | **Total: $1,376.23** |

| From | To | Principal (Unpaid Overtime Damages) | Interest Calculation (Principal x .09 x Years from Midpoint Date to 3/4/2019) | Interest Owed |
|---|---|---|---|---|
| 6/30/2012 | 5/2/2018 | $52,419.27 | $52,419.27 x .09 x (1372/365) | $17,733.51 |
| 5/21/2018 | 6/17/2018 | $342.81 | $342.81 x .09 x (274/365) | $23.16 |
| | | | | **Total: $17,756.67** |

| From | To | Principal (Spread-of-Hours Damages) | Interest Calculation (Principal x .09 x Years from Midpoint Date to 3/4/2019) | Interest Owed |
|---|---|---|---|---|
| 6/30/2012 | 12/30/2013 | $3,523.05 | $3,523.05 x .09 x (2,164/365) | $1,879.86 |
| 12/31/2013 | 12/30/2014 | $2,496.00 | $2,496.00 x .09 x (1,707/365) | $1,050.58 |
| 12/31/2014 | 1/31/2015 | $210.00 | $210.00 x .09 x (1,509/365) | $78.14 |
| | | | Total: | $3,008.58 |

Overall, I recommend that Cazares be awarded a total of **$139,874.26** in unpaid minimum wages, unpaid overtime compensation, spread-of-hours pay, liquidated damages, and WTPA statutory damages, plus **$22,141.48** in prejudgment interest, with additional prejudgment interest, up to the date of entry of final judgment, to be calculated by the Clerk of Court.

2. **Delacruz**

a. **Unpaid Minimum Wages and Overtime Compensation**

Delacruz claims that, like Cazares, Defendants failed to pay him both required minimum wages and overtime compensation.  (*See* Delacruz Decl. ¶ 20.)  Delacruz states that he worked as a food preparer at Defendants' bagel shop (*id.* ¶ 7), but his Declaration is confusing as to the timing of his employment.  At first, he states that he "was employed by Defendants from approximately August 2017 until on or about May 26, 2018."  (*Id.* ¶ 6.)  Then, however, he provides information regarding specific days and hours that he worked, and amounts that he was paid, for two earlier periods:  (1) from approximately October 12, 2013 through December 2014, and (2) from approximately April 2015 through July 2017 (*id.* ¶¶ 7-8), and he provides no similar information for any period from August 2017 forward (*see generally id.*).  The Amended Complaint only adds to this confusion, as it first alleges that Delacruz was employed by Defendants from October 12, 2013 until on or about March 31, 2018 (Am. Compl. ¶¶ 24, 83), and then, similarly to the Declaration, only provides specific allegations regarding Delacruz's hours and compensation for the two periods noted above, ending with July 2017 (*see id.* ¶¶ 90-91).  Under the circumstances, and as no evidence has been submitted regarding any

38

specifics of Delacruz's employment subsequent to July 2017, this Court recommends that he only be awarded damages in connection with the earlier periods, for which sufficient evidence has been provided.

For each of the two periods from October 12, 2013 through December 2014, and from April 2015 through July 2017, Delacruz states that he worked about nine hours per day (from about 11:00 a.m. to 8:00 p.m.), six days per week (Fridays through Wednesdays), for a total of 54 hours per week.  (Delacruz Decl. ¶ 8; *see* Am. Compl. ¶ 88.)[12]  For the first of these two periods, Delacruz states that he was paid a fixed salary of $300 per week, and, for the second period, he states that he was paid $9.00 per hour.  (Delacruz Decl. ¶¶ 10-11; *see* Am. Compl. ¶¶ 90-91.)

As with Cazares, there is no evidence that Delacruz and Defendants had an agreement that the fixed weekly salary that he was paid during the first part of his employment was

---

[12] The Declarations submitted by Delacruz, Angel, and Robles do not specifically indicate if they received any meal or rest breaks during the course of their work days, although the Amended Complaint does allege that "Defendants made unlawful deductions from Plaintiffs' wages including, but not limited to, deductions for meal breaks Plaintiffs *were not permitted to and did not take*."  (Am. Compl. ¶ 342 (emphasis added).)  Under both the FLSA and NYLL, "all of the time worked during a continuous workday is compensable, save for bona fide meal breaks."  *Hart v. Rick's Cabaret Int'l Inc.*, 60 F. Supp. 3d 447, 475 n.15 (S.D.N.Y. 2014) (citing *IBP, Inc. v. Alvarez*, 546 U.S. 21, 37 (2005)); *see Reich*, 121 F.3d at 64-65 (interpreting 29 C.F.R. § 785.19)).  For a break to so qualify, the employee "must be completely relieved from duty for the purposes of eating regular meals."  29 C.F.R. § 785.19.  "Ordinarily 30 minutes or more is long enough for a bona fide meal period," *id.*, but "[r]est periods of short duration, running from 5 minutes to about 20 minutes . . . are customarily paid for as working time [and] must be counted as hours worked."  29 C.F.R. § 785.18.  Drawing all reasonable inferences from the Declarations submitted by Delacruz, Angel, and Robles in their favor in light of Defendants' default, this Court finds it reasonable to read these plaintiffs' assertions regarding their total work hours to mean that those hours were not reduced by meal breaks, which would be consistent with the allegations of the Amended Complaint.  Thus, this Court will not make any adjustments to those stated hours.  *See Villanueva v. 179 Third Ave. Rest Inc.*, 500 F. Supp. 3d 219, 235 (S.D.N.Y. 2020), *report and recommendation adopted*, 2021 WL 2139441 (May 26, 2021).

intended to cover all of the hours that he then worked per week.  Thus, this Court presumes that the $300 per week was only intended to cover the first 40 hours of Delacruz's work week.  Thus, for the period from October 12, 2013 through December 31, 2014, this Court calculates Delacruz's base hourly rate to have been $7.50 per hour (*i.e.*, $300/week ÷ 40 hours), which was more than the New York State minimum wage rate of $7.15 per hour that was in effect through December 30, 2013, but less than the later New York State minimum wage rates of $8.00 per hour (which was in effect from December 31, 2013 through December 30, 2014) and $8.75 per hour (which went into effect on December 31, 2014).

For the second period of time – from April 2015 through July 2017 – Delacruz's pay of $9.00 per hour was greater than or equal to the applicable New York State minimum wage until December 31, 2016, when that rate was increased to $10.50 per hour.  For each of the two periods of time, Delacruz worked 14 hours per week of overtime, for which he was entitled to be paid an additional 50 percent of his regular base rate (or of the minimum wage rate, if higher).

Based on the above, Delacruz is owed the following unpaid minimum wages and overtime compensation, under the NYLL:

| Periods worked | Unpaid Minimum Wages (first 40 hrs/wk) | | | | | | Unpaid Overtime | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | No. of wks | Base hourly rate | NY min wage | Under-paym't per hr | Under-paym't per wk | Total unpaid min wages | O/T owed per hr | Hours O/T per wk | Under-paym't per wk | Total unpaid O/T |
| 10/12/13-12/30/13 | 11.29 | $7.50/hr | $7.15/hr | – | – | – | $11.25/hr | 14 | $157.50/wk | $1,778.18 |
| 12/31/13-12/30/14 | 52 | $7.50/hr | $8.00/hr | $ .50/hr | $20.00/wk | $1,040.00 | $11.25/hr | 14 | $157.50/wk | $8,190.00 |
| 12/31/14 | 1 day | $7.50/hr | $8.75/hr | $1.25/hr | $10.00 (one day) | $10.00 | $13.125/hr | 2.8 (1 day) | $36.75 (1 day) | $36.75 |
| 4/1/15-12/30/15 | 39 | $9.00/hr | 8.75/hr | – | – | – | $4.50/hr | 14 | $63.00/wk | $2,457.00 |
| 12/31/15-12/30/16 | 52 | $9.00/hr | $9.00/hr | – | – | – | $4.50/hr | 14 | $63.00/wk | $3,276.00 |
| 12/31/16-7/31/17 | 30.29 | $9.00/hr | 10.50/hr small employer | $1.50/hr | $60.00/wk | $1,817.40 | $5.25/hr | 14 | $73.50/wk | $2,226.32 |
| | | | | | | Total: $2,867.40 | | | | Total: $17,964.25 |

**b.   Liquidated Damages**

For the reasons discussed above with respect to Cazares, Delacruz is entitled to recover 100 percent of his unpaid wages as liquidated damages, under the NYLL.  *See* N.Y. Lab. Law § 663(1).  As Delacruz is entitled to recover $2,867.40 in unpaid minimum wages, and $17,964.25 in unpaid overtime compensation, he is entitled to a total of **$20,831.65** in liquidated damages.

**c.   Statutory Damages**

Also like Cazares, Delacruz has stated that he never received, from Defendants, the wage statements and wage notices that were required to be provided to him pursuant to the WTPA. (*See* Delacruz Decl. ¶¶ 17-19; *see* Am. Compl. ¶¶ 94-96.)  As Delacruz is entitled to recover $250 for each work day during his employment for which Defendants failed to provide him with proper wage statements, capped at $5,000, *see* N.Y. Lab. Law § 198(1-d), and as Delacruz has attested that he worked more than 20 work days, he is entitled to the maximum of $5,000.00 in statutory damages for wage-statement violations.  He is similarly entitled to the maximum of

41

$5,000.00 in statutory damages for wage-notice violations, as he has attested that he worked more than 100 work days, and as he is entitled to recover $50 for each work day on which Defendants failed to provide him with proper wage notices, up to a maximum of $5,000. *See* N.Y. Lab. Law § 198(1-b).

Accordingly, I recommend that Delacruz be awarded **$10,000.00** in statutory damages under the WTPA for Defendants' failure to provide him with required wage statements and wage notices.

### d.    Prejudgment Interest

Delacruz is also entitled to prejudgment interest on his damages for unpaid minimum wages and overtime compensation, calculated as shown below.

| From | To | Principal (Unpaid Minimum Wage Damages) | Interest Calculation (Principal x .09 x Years from Midpoint Date to 3/4/2019) | Interest Owed |
|---|---|---|---|---|
| 12/31/2013 | 12/30/2014 | $1,040.00 | $1,040.00 x .09 x (1,707/365) | $437.74 |
| 12/31/2014 | 12/31/2014 | $10.00 | $10.00 x .09 x (1524/365) | $3.76 |
| 12/31/2016 | 7/31/2017 | $1,817.40 | $1,817.40 x .09 x (687/365) | $307.86 |
| | | | | **Total:  $749.36** |

| From | To | Principal (Unpaid Overtime Damages) | Interest Calculation (Principal x .09 x Years from Midpoint Date to 3/4/2019) | Interest Owed |
|---|---|---|---|---|
| 10/12/2013 | 12/30/2013 | $1,778.18 | $1,778.18 x .09 x (1,935/365) | $848.41 |
| 12/31/2013 | 12/30/2014 | $8,190.00 | $8,190.00 x .09 x (1,707/365) | $3,447.20 |
| 12/31/2014 | 12/31/2014 | $36.75 | $36.75 x .09 x (1524/365) | $13.81 |
| 4/1/2015 | 12/30/2015 | $2,457.00 | $2,457.00 x .09 x (1296/365) | $785.16 |
| 12/31/2015 | 12/30/2016 | $3,276.00 | $3,276.00 x .09 x (975/365) | $787.59 |
| 12/31/2016 | 7/31/2017 | $2,226.32 | $2,226.32 x .09 x (687/365) | $377.13 |
| | | | | **Total: $6,259.30** |

Overall, I recommend that Delacruz be awarded a total of **$51,663.30** in unpaid minimum wages, unpaid overtime compensation, liquidated damages, and WTPA statutory damages, plus **$7,008.66** in prejudgment interest, as well as additional prejudgment interest, up to the date of entry of final judgment, to be calculated by the Clerk of Court.

3.      **Romano**

a.      **Unpaid Overtime Compensation**

Romano states that he was employed by Defendants as a bagel maker from approximately June 2012 through December 2016, and then as a delivery worker from approximately January 2017 through June 17, 2018.  (Romano Decl. ¶ 7; *see* Am. Compl. ¶ 113.) He further states that, throughout this time, he worked approximately nine hours per day (from about 5:00 a.m. to 2:00 p.m.), six days per week, totaling approximately 54 hours per week.  (*Id.* ¶ 12; *see* Am. Compl. ¶ 119.)  He also states that, during his employment, Defendants "never granted [him] any breaks or meal periods of any kind."  (*Id.* ¶ 21; *see* Am. Compl. ¶ 128.)

Throughout the period of his employment, Romano asserts that he was paid a fixed weekly salary, although it increased over time.  (*See id.* ¶¶ 16-20; *see* Am. Compl. ¶¶ 123-27.) Specifically, he states that he was paid:

(1)      $500 per week from approximately June 2012 through about May 2014;

(2)      $560 per week from approximately June 2014 through June 2016;

(3)      $600 per week from approximately July 2016[13] through June 2017;

---

[13] Romano's Declaration appears to contain a typographical error, as, based on the type of phrasing that is inartfully, but consistently, used throughout the plaintiff declarations (*see supra*, at n.8), Romano seems to say that he was paid approximately $560 per week through June 2016, and that he was then paid $600 per week starting that same month.  (*See* Romano Decl. ¶¶ 17-18; *see also* Am. Compl. ¶¶ 124-25.)  This Court will resolve the issue by assuming that Romano was paid $560 per week through the end of June 2016, and was then paid $600 per week starting in *July* 2016.

(4)    $640 per week from approximately July 2017[14] through December 2017; and

(5)    $700 per week from approximately January 2018 through June 17, 2018.

(*Id.* ¶¶ 16-20; *see* Am. Compl. ¶¶ 123-27.)

As there is no evidence that Romano had an express agreement that his fixed salary would cover all hours worked, this Court again assumes that his fixed weekly pay was intended to cover his first 40 hours of work per week. Accordingly, based on a consistent 54-hour work week, this Court calculates his base hourly rate to have been:

(1)    $12.50 per hour for the period from June 2012 through about May 2014;

(2)    $14.00 per hour for the period from June 2014 through June 2016;

(3)    $15.00 per hour for the period from July 2016 through June 2017;

(4)    $16.00 per hour for the period from July 2017 through December 2017; and

(5)    $17.50 per hour for the period from January 2018 through June 17, 2018.

These hourly rates, for all periods, were higher than the applicable state and federal minimum wages. (*See* Discussion, *supra*, at Section III(A)(3).)[15] Accordingly, Romano is only entitled to recover unpaid overtime compensation, not any unpaid minimum wages.

---

[14] Again, there appears to be a typographical error in Romano's Declaration (*see* Romano Decl. ¶¶ 18-19; *see also* Am. Compl. ¶¶ 125-26), which this Court will resolve in the same manner as described in n.8, *supra*.

[15] The Amended Complaint contains an allegation that, although Romano worked for a portion of his employment as a delivery worker, he was "also required to spend a significant portion of his work day performing [] non-tipped duties," and that "he spent over 20% of each day performing non-tipped work throughout his employment with Defendants." (Am. Compl. ¶¶ 114-15.) These allegations are only relevant to the question of whether an employer may

As, for any hours in excess of 40 hours per week, Romano was entitled to be paid at an hourly rate of 150 percent of his base hourly rate, and as he states that he worked approximately 54 hours per week (which would represent 14 hours per week of overtime), his unpaid overtime compensation may be calculated as shown, starting with June 30, 2012, which is as far back as the NYLL statute of limitations would reach:

| Periods worked | Unpaid Overtime | | | | | |
|---|---|---|---|---|---|---|
| | No. of wks | Base hourly rate | O/T rate per hr | Hours O/T per wk | Under-paym't per wk | Total unpaid O/T |
| 6/30/2012-5/31/14 | 100 | $12.50/hr | $18.75/hr | 14 | $262.50/wk | $26,250.00 |
| 6/1/14-6/30/16 | 108 | $14.00/hr | $21.00/hr | 14 | $294.00/wk | $31,752.00 |
| 7/1/16-6/30/17 | 52 | $15.00/hr | $22.50/hr | 14 | $315.00/wk | $16,380.00 |
| 7/1/17-12/31/17 | 26 | $16.00/hr | $24.00/hr | 14 | $336.00/wk | $8,736.00 |
| 1/1/18-6/17/18 | 23.86 | $17.50/hr | $26.25/hr | 14 | $367.50/wk | $8,768.55 |
| | | | | | Total: $ 91,886.55 | |

Based on this calculation, I recommend that Romano be awarded **$ 91,866.55** in unpaid overtime compensation, under the NYLL.

### b.      Unlawful Gratuity Retention

Romano also seeks an award under Section 196-d of the NYLL for gratuities that Defendants purportedly retained from his pay.  (*See* Am. Compl. ¶ 131.)  Specifically, Romano asserts that "Defendants pocketed a percentage of the tips he earned from customers" (Romano Decl. ¶ 24; Am. Compl. ¶ 131), but he has not specified what that percentage was, nor has he

---

properly take a "tip credit" for a particular employee and pay that employee at a lower minimum wage rate.  (*See supra*, at n.4.)  As Romano was apparently paid above the regular minimum wage at all times during his employment, the law regarding the "tip credit" is inapplicable here. This Court also notes that these allegations, regarding the time Romano spent performing non-tipped work, are absent from his Declaration.  (*See generally* Romano Decl.)

given any other indication as to the amount of gratuities that were retained (*see generally id.*).

For this reason, this Court has *no* basis – much less any reasonably certain basis – on which it

may calculate Romano's damages for unlawfully retained gratuities, and, accordingly, I

recommend that no such damages be awarded to him.

### c.    <u>Liquidated Damages</u>

Under the NYLL, Romano is entitled to recover 100 percent of his unpaid wages, from

the entire period covered by his claim, in liquidated damages.  *See* N.Y. Lab. Law § 663(1).  As

Romano is due $91,866.55 in unpaid overtime compensation, he should similarly be awarded

**<u>$91,866.55</u>** in liquidated damages under the NYLL.

### d.    <u>Statutory Damages</u>

Like Cazares and Delacruz, Romano has also demonstrated an entitlement to statutory

damages for wage-statement and wage-notice violations under the WTPA.  (*See* Romano Decl.

¶¶ 26-28; *see* Am. Compl. ¶¶ 132-34.)  As with the plaintiffs whose damages are discussed

above, Romano's statements regarding the periods of his employment are sufficient to

demonstrate that he is entitled to the maximum damages of $5000.00 for each type of statutory

violation.  N.Y. Lab. Law §§ 198(1-b), (1-d).  Accordingly, I recommend that Romano be

awarded **<u>$10,000.00</u>** in statutory damages under the WTPA for Defendants' failure to provide

him with required wage statements and wage notices.

### e.    <u>Prejudgment Interest</u>

Romano is entitled to prejudgment interest on his damages for unpaid overtime pay,

which totals $91,866.55.  Calculating interest from the midpoint date of June 24, 2015 to

March 4, 2019, the date of Plaintiffs' damages submissions, and applying a rate of nine percent

per annum to this principal amount yields $30,557.58 ($91,866.55 x .09 x (1349/365)) in

prejudgment interest.  Accordingly, I recommend that Romano be awarded **$30,557.58** in prejudgment interest on damages arising out of his unpaid overtime wage claims, with additional interest to be calculated by the Clerk of Court.

Overall, I recommend that Romano be awarded a total of **$193,733.10** in unpaid overtime compensation, liquidated damages, and WTPA statutory damages ($91,866.55 + $91,866.55 + $10,000.00), plus **$30,557.58** in prejudgment interest, with additional prejudgment interest to be calculated by the Clerk of Court to the date of entry of final judgment.

### 4.    Angel

#### a.    Unpaid Base Wages and Overtime Compensation

Plaintiff Angel states that he was employed by Defendants as a sandwich maker from approximately April 2017 through June 16, 2018.  (Angel Decl. ¶¶ 6-7; *see* Am. Compl. ¶¶ 136-37.)  For this period, Angel states that he typically worked only six-and-one-half hours per day (from about 6:00 a.m. to 12:30 p.m.), six days per week, for a total of approximately 39 hours per week.  (*Id.* ¶ 8; Am. Compl. ¶ 141.)  He also states, however, that, in 2018, there were three weeks in which he instead worked seven hours per day (from about 6:00 a.m. to 1:00 p.m.), six days per week, totaling 49 hours per week.  (*See id.* ¶¶ 9-10; Am. Compl. ¶¶ 142-43.)

As for his pay, Angel states that, from approximately April 2017 through May 2017, he was generally paid $12.50 per hour; from approximately June 2017[16] through May 2018, he was paid $13.00 per hour; from approximately June 1 through the end of his employment on June 16,

---

[16] As with Romano's Declaration, there is a lack of clarity regarding the time periods being described by Angel, in his Declaration.  (*See* Angel Decl. ¶¶ 12-13 (describing periods of employment both beginning and ending with "May 2017").)  For the same reasons discussed above, this Court has assumed that, when Angel states that he worked "until" a certain month, he means that he worked "through" that month, and that his next period of employment began with the following month.

2018, he was paid $14.00 per hour.  (*Id.* ¶¶ 12-14; *see* Am. Compl. ¶¶ 145-47.)  He also states, though, that there were approximately two weeks in April 2017, as well as approximately two weeks in June 2018, when he was not paid any wages for his work.  (*Id.* ¶ 15; *see* Am. Compl. ¶ 148.)  As Angel states that he worked a total of 16 days in June 2018, this Court takes this to mean that he was only paid for approximately two days of work that month, at the stated hourly rate.

As his regular hourly rates were, at all times, higher than the applicable minimum wages set by both federal and state law, Angel may only recover unpaid wages for (1) the approximately four weeks when, he claims, he was not paid at all, and (2) unpaid overtime for the approximately three weeks in 2018 when he worked more than 40 hours per week.

For the approximately two weeks in April 2017 when, according to Angel, he was not paid at all, he should have been paid, at his regular rate of $12.50 per hour, for the approximately 39 hours that he worked in each of those weeks, for a total of $975.00 (*i.e.*, $12.50/hr x 39 hrs/wk x 2 wks).  For the approximately two weeks in June 2018 that Angel claims not to have been paid, he should have received his then-regular rate of $14.00 per hour, for 39 hours, for a total of $1,092.00 (*i.e.*, $14.00/hr x 39 hrs/wk x 2 wks).  Adding these together would result in an award of **$2,067.00** for unpaid base wages.

As for his unpaid overtime compensation, Angel only states that, for three weeks "in the year 2018" he worked 49 hours per week (Angel Decl. ¶ 10) – he does not specify whether these three weeks fell entirely *before* June 2018 (when he claims his base hourly rate was $13.00 per hour), or whether a portion of that time fell within the first 16 days of June 2018 (for which he seems to say that his base rate was increased to $14.00 per hour).  Given this lack of clarity, this Court finds that Angel should not be awarded overtime pay based on the higher hourly rate, and

it will assume that the time in question fell prior to June 2018.  As noted, for that earlier part of the year, Angel asserts that his base rate of pay was $13.00 per hour.  If he worked 49 hours per week for three weeks, then he worked nine hours of overtime for each of those weeks, for which he was entitled to be paid at the rate of $19.50 per hour (*i.e.*, $13.00 x 1.5).  As he was only paid $13.00 per hour, he is entitled to the difference – in other words, $6.50 per hour – for the nine hours per week in question.  He is thus entitled to an award of unpaid overtime compensation of **$175.50** (*i.e.*, $6.50/hr x 9 hrs/wk x 3 wks).

Overall, I recommend that Angel be awarded damages for unpaid wages in the amount of **$2,242,50**, representing $2,067.00 in unpaid base wages, plus $175.50 in unpaid overtime compensation.

### b.        Liquidated Damages

Under New York law, Angel is entitled to recover 100 percent of his unpaid wages, from the entire period covered by his claim, in liquidated damages.  *See* N.Y. Lab. Law § 663(1).  As set out above, Angel is entitled to recover $2,242.50 in unpaid wages ($2,067.00 in unpaid base wages and $175.50 in unpaid overtime compensation).  Therefore, in total, Angel should be awarded **$2,242.50** in liquidated damages under the NYLL.

### c.        Statutory Damages

For the same reasons discussed above with respect to the other plaintiffs, Angel, who states that he never received any of the required wage statements or wage notices during his employment (Angel Decl. ¶¶ 16-18; *see* Am. Compl. ¶¶ 149-51), and who reportedly worked for Defendants for enough days to qualify for the maximum recoveries under Sections 198(1-b) and (1-d) of the WTPA, should be awarded $5,000.00 under each section.  Accordingly, I

recommend that Angel be awarded **$10,000.00** in statutory damages under the WTPA for

Defendants' failure to provide him with required wage statements and wage notices.

### d.   Prejudgment Interest

Angel is entitled to prejudgment interest on his damages for unpaid minimum wages and

unpaid overtime wages.  As each of the claims for which these damages are sought accrued at

different times, interest must be calculated separately for each.

With respect to Angel's $2,067.00 in unpaid minimum wages, given that those damages

accrued variably due to the increases in the applicable minimum wage, and that his claim for

unpaid minimum wages spans two different periods, this Court calculates prejudgment interest

separately for each time period as to which a particular minimum-wage requirement applied.  *Cf.*

*Said*, 2010 WL 1265186, at *9.  This calculation yields the following amount of prejudgment

interest:

| From | To | Principal (Unpaid Minimum Wage Damages) | Interest Calculation (Principal x .09 x Years from Midpoint Date to 3/4/2019) | Interest Owed |
|---|---|---|---|---|
| 4/1/2017 | 4/15/2017 [17] | $975.00 | $975.00 x .09 x (695/365) | $167.08 |
| 6/2/2018 | 6/16/2018 [18] | $1,092.00 | $1,092.00 x .09 x (268/365) | $72.16 |
| | | | | Total:  $239.24 |

With respect to Angel's $175.50 in unpaid overtime wages, this Court calculates his

prejudgment interest from the midpoint date of the period of employment for which he can

---

[17] It is not apparent from Angel's Declaration or the Amended Complaint what the exact date range was of the two-week period during which Angel was not compensated in April 2017. The Damages Chart, however, appears to suggest that these dates were April 1, 2017 to April 15, 2017.  Therefore, this Court determines the midpoint date based on this date range.

[18] It is not apparent from Angel's Declaration, the Amended Complaint, or the Damages Chart what the exact date range was of the two-week period during which Angel was not compensated in June 2018.  Therefore, this Court assumes it was from June 2, 2018 to June 16, 2018, and determines the midpoint date based on this date range.

recover damages, March 17, 2018,[19] to the date of Plaintiffs' damages submissions, March 4, 2019.  Applying the prejudgment rate of nine percent per annum to this principal amount yields prejudgment interest in the amount of **$15.23** ($175.50 x .09 x (352/365)).

Overall, I recommend that Angel be awarded a total of **$14,485.00** in unpaid minimum wages, unpaid overtime compensation, liquidated damages, and WTPA statutory damages, plus **$254.47** in prejudgment interest, with additional prejudgment interest to be calculated by the Clerk of Court until the date of final entry of judgment.

     5.     **Robles**

     a.     **Unpaid Wages**

Robles states, in her Declaration, that she worked for Defendants, first as a smoothie maker and then as a cashier, for two periods:  first, from approximately August 20, 3013 through February 2017, and, second, from approximately August 2017 through June 15, 2018.  (Robles Decl. ¶¶ 6-7; *see* Am. Compl. ¶¶ 255-56.)  She provides little information, however, regarding her hours and pay.  In this regard, she only provides her hours for the second of her two periods of employment, stating that, for that period, she worked approximately six hours per day (from about 7:00 a.m. to 1:00 p.m.), five days per week (Mondays through Fridays), for a total of approximately 30 hours per week.  (*Id.* ¶ 10.; *see* Am. Compl. ¶ 259.)  As for her pay, she only states that, in 2018, she was generally paid $13.00 per hour, but that, for approximately five days in June of that year, she was not paid any wages at all for her work.  (*Id.* ¶¶ 12-13; *see* Am. Compl. ¶¶ 261-62.)

---

[19] It is not apparent from Angel's Declaration or the Amended Complaint what the exact date range was of the three-week period during which Angel worked overtime hours in 2018.  As noted above, however, this Court assumes that these three weeks occurred prior to June 2018.  Therefore, this Court determines the midpoint date based on the time period of January 1, 2018 to May 31, 2018.

As the only hourly rate that Robles has provided for any of her work for Defendants was greater than the federal and state minimum wages that were applicable for the full period of her employment, Robles is not entitled to recover for any unpaid minimum wages.  She *is* entitled to recover, however, for the approximately five days that, she states, she was not paid at all.  At a base hourly rate of $13.00 per hour, and for a total of 30 hours, she is entitled to a total of **$390.00** (*i.e.*, $13.00/hr x 30 hrs) in damages for unpaid wages.

> **b.      Liquidated Damages**

Under New York law, Robles is entitled to recover 100 percent of her unpaid wages, as liquidated damages.  *See* N.Y. Lab. Law § 663(1).  As she is entitled to $390.00 damages for unpaid wages, she is entitled to **$390.00** in liquidated damages under the NYLL.

> **c.      Statutory Damages**

Although Robles's statements in her Declaration regarding Defendants' failure to provide her with required wage statements and wage notices are less specific than the statements made on this subject in the other plaintiff declarations discussed herein (*see, e.g.*, Cazares Decl. ¶¶ 20-21), she does assert that "[n]o notification, either in the form of posted notices or other means, was ever given to [her] regarding overtime and wages under the FLSA and NYLL" (Robles Decl. ¶ 15).  This Court finds that this, read in conjunction with the allegations of the Amended Complaint (*see* Am. Compl. ¶¶ 264-66), are sufficient to justify an award of statutory damages to Robles.  As Robles has adequately demonstrated that she worked for Defendants for enough days to qualify for the maximum recoveries under Sections 198(1-b) and (1-d) of the WTPA, she is entitled to be awarded $5,000.00 under each section.  Accordingly, I recommend that Robles be awarded **$10,000.00** in statutory damages under the WTPA for Defendants' failure to provide her with required wage statements and wage notices.

### d.   Prejudgment Interest

Robles is entitled to prejudgment interest on her unpaid wages of $390.00.[20]  Calculating interest from the midpoint date of June 12, 2018 to March 4, 2019, the date of Plaintiffs' damages submissions, and applying a rate of nine percent per annum to this principal amount yields **$25.48** ($390.00 x .09 x (265/365)) in prejudgment interest.

Overall, I recommend that Robles be awarded a total of **$10,780.00** in unpaid minimum wages, liquidated damages, and WTPA statutory damages, plus **$25.48** in prejudgment interest, with additional prejudgment interest to be calculated by the Clerk of Court.

## IV.   ATTORNEYS' FEES AND COSTS

Plaintiffs also seek to recover the attorneys' fees and costs incurred in connection with this action – specifically, they seek $2,550.00 in attorneys' fees for 7.80 hours of work performed by counsel, and litigation costs in the amount of $475.00.  (*See* Faillace Decl. Ex. N (Dkt. 46-14) ("Attorney Time Records").)  For the reasons that follow, I recommend that attorneys' fees be awarded in the reduced amount of $2,160.00, and that litigation costs be awarded in the reduced amount of $400.00.

### A.   Applicable Legal Standards for Awards of Fees and Costs

"Under both the FLSA and the NYLL, a prevailing plaintiff may recover [his or] her reasonable attorney's fees and costs."  *Najnin*, 2015 WL 6125436, at *4; s*ee* 29 U.S.C. § 216(b); N.Y. Lab. Law § 198(1-a).  The court has discretion to determine the amount of attorneys' fees that would be appropriate to satisfy a fee award.  *See Barfield v. New York City Health & Hosp. Corp.*, 537 F.3d 132, 151-52 (2d Cir. 2008).  As a general matter, the "starting point" in

---

[20] The Damages Chart submitted by Plaintiffs does not appear to calculate any prejudgment interest for Robles.

analyzing whether claimed attorneys' fees are appropriate is "the lodestar – the product of a reasonable hourly rate and the reasonable number of hours required by the case." *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (lodestar calculation creates a "'presumptively reasonable fee'" (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections*, 522 F.3d 182, 183 (2d Cir. 2008))).  The party seeking fees bears the burden of demonstrating that its requested fees are reasonable, *see Blum v. Stenson*, 465 U.S. 886, 897 (1984), and must provide the court with sufficient information to assess the fee application, *see New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983).

For purposes of the lodestar, an attorney's hourly rate is considered reasonable when it is "in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum*, 465 U.S. at 895 n.11.  Although the fee applicant has the burden of demonstrating prevailing market rates for comparable work, *see Broome v. Biondi*, 17 F. Supp. 2d 230, 237 (S.D.N.Y. 1997), the court may also apply its "own knowledge" of rates charged in the community in assessing the reasonableness of the rates sought, *Miele v. N.Y. State Teamsters Conf. Pension & Ret. Fund*, 831 F.2d 407, 409 (2d Cir. 1987); *McDonald ex rel Prendergast v. Pension Plan of the NYSA-ILA Pension Trust Fund*, 450 F.3d 91, 96-7 (2d Cir. 2006).  Paralegal services are includable in an award of attorneys' fees, and the reasonableness of paralegal fees are also determined by reference to the prevailing hourly rate in the relevant community.  *See Marisol A.  ex rel. Forbes v. Giuliani*, 111 F. Supp. 2d 381, 386 (S.D.N.Y. 2000) (citing *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 284 (1989); *U.S. Football League v. Nat'l Football League*, 887 F.2d 408, 415-16 (2d Cir. 1989)).

In *Arbor Hill*, the Second Circuit emphasized that the "reasonable hourly rate is the rate a paying client would be willing to pay." *Arbor Hill*, 522 F.3d at 190.  In assessing whether an hourly rate is reasonable, the court should "bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Id.*  When an attorney's requested hourly rate is higher than rates found to be reasonable in the relevant market, it is within the court's discretion to reduce the requested rate.  *See Savino v. Computer Credit, Inc.*, 164 F.3d 81, 87 (2d Cir. 1998).

As for the time component of the lodestar, an attorney's stated number of hours should be reduced by the court where it is greater than required to litigate the case effectively, *see Seitzman v. Sun Life Assurance Co. of Canada*, 311 F.3d 477, 487 (2d Cir. 2002) (holding that time component should not reflect excessive hours), or where the attorney's proffered time records are vague or otherwise inadequate to enable the court to determine the reasonableness of the work performed or the time expended, *see Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Thai-Lao Lignite (Thailand) Co. v. Gov't of Lao People's Democratic Republic*, No. 10cv05256 (KMW) (DF), 2012 WL 5816878, at *10 (S.D.N.Y. Nov. 14, 2012) (finding that vague time records were insufficient to substantiate claimed expenditures of time; collecting cases).  In determining whether an excessive amount of time was expended on the matter, the court may also consider, *inter alia*, the nature and quality of the work submitted by counsel in connection with the litigation, *see Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998); *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 226, 232 (2d Cir. 1987), and whether the work was complicated or straightforward, *see Castellanos v. Mid Bronx Cmty. Hous. Mgmt. Corp.*, No. 13cv3061 (JGK), 2014 WL 2624759, at *6 (S.D.N.Y. June 10, 2014) (considering "the

straightforward nature of the work performed [and] the relative simplicity of the issues involved"
(internal quotation marks and citations omitted)).

As the party seeking attorneys' fees bears the burden of demonstrating that its claimed
fees are reasonable, *Thai-Lao Lignite (Thailand)*, 2012 WL 5816878, at *3 (citations omitted), it
must submit, in support of its request for fees, contemporaneous time records that "specify, for
each [timekeeper], the date, the hours expended, and the nature of the work done," *id.* (quoting
*N.Y. State Ass'n for Retarded Children v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983)) (internal
quotation marks omitted).  Where an attorney's time records are inadequate to enable the court to
determine whether the time expended was reasonable, a percentage reduction may be applied as
a "practical means of trimming fat" from a fee application.  *N.Y. State Ass'n for Retarded
Children*, 711 F.2d at 1146.

In addition to the lodestar amount, attorneys' fees may include "those reasonable
out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients."
*LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998) (citation omitted).  These
expenses, or "costs," may include photocopying, travel, telephone costs, and postage, *Kuzma v.
Internal Revenue Serv.*, 821 F.2d 930, 933-34 (2d Cir. 1987), as well as filing fees and
reasonable process-server fees, *Rosendo v. Everbrighten Inc.*, No. 13cv7256 (JGK) (FM), 2015
WL 1600057, at *9 (S.D.N.Y. Apr. 7, 2015), *report and recommendation adopted*, 2015
WL 4557147 (July 28, 2015).

**B.**     **Plaintiffs' Application For Fees and Costs**

**1.**     **Reasonable Hourly Rates**

During the period for which fees and costs have been requested, Plaintiffs were
represented in this case by Faillace and Gennadiy Naydenskiy, Esq. ("Naydenskiy"), both of

whom were then with the Faillace Firm.  (*See* Faillace Decl. ¶ 15(viii)(i)-(ii).)  In addition, according to Faillace, the firm assigned one or more paralegals to the case (whom Faillace has not named, and who are identified only in the firm's Attorney Time Records only as "PL").  (*See* Faillace Decl. ¶ 15(viii).)

At the time of Plaintiffs' inquest submissions, Faillace was the managing partner of the Faillace Firm, and had been practicing employment law since 1983.  (*See id.* ¶ 15(viii)(i).)  For periods of time, he had taught employment-discrimination law as an adjunct professor at both Fordham University School of Law and Seton Hall University Law School, and he described himself in his Declaration as a "nationally renowned speak [sic] and writer on employment law." (*Id.*)  He represented that, at the time of Plaintiffs' submissions, he billed his time at a rate of $450 per hour.  (*See id.*)

This Court notes that, at this point, Faillace has been suspended from practice from this Court – a fact that would certainly impact his current reputation and could thus have bearing on the reasonableness of his proffered billing rate.  *See Blum*, 465 U.S. at 895 n.11 (stating that, among the factors that bear on the reasonableness of an attorney's hourly rate is his or her reputation).  Still, the work that was performed by Faillace in this case was performed well before his suspension, and, for similar work, this Court has previously recommended approval of an hourly rate of $450 for Faillace, given his many years of experience in employment litigation. *See Almanzar v. 1342 St. Nicholas Ave. Rest. Corp.*, No. 14cv7850 (VEC) (DF), 2016 WL 8650464 at *19 (S.D.N.Y. Nov. 7, 2016), *report and recommendation adopted*, 2017 WL 1194682 (Mar. 30, 2017); *see also, e.g.*, *De La Cruz v. Trejo Liquors, Inc.*, No. 16cv4382 (VSB) (DF), 2019 WL 9573763, at *18 (S.D.N.Y. Sept. 10, 2019) (noting that, "[f]or partners or heads of small law firms practicing in this area, the Court has usually approved hourly rates in the $300

to $450 range." (citations omitted)), *report and recommendation adopted,* 2020 WL 4432298

(July 30, 2020).  Rather than adjust Faillace's rate retroactively for recent reputational problems,

this Court recommends that this rate of $450 per hour be approved in this case as reasonable.

Naydenskiy's requested hourly rate, on the other hand, is higher than the "prevailing

[rates] in the community for similar services by lawyers of reasonably comparable experience."

*Blum*, 465 U.S. at 894 n.11.  Naydenskiy graduated from the State University of New York at

Buffalo Law School in 2013, had been practicing employment law since then, and reportedly

billed his time on this case at the rate of $350 per hour.  (*See* Faillace Decl. ¶ 15(viii)(ii).)

Naydenskiy, however, only became associated with the Faillace Firm in 2018, the year in which

this case was commenced (*see id.*), and several courts in this District have recently approved

only a reduced hourly rate of $200.00 per hour for his work, *see*, *e.g.*, *Garcia v. Saigon Mkt.,*

*LLC*, No. 15cv9433 (VSB) (SLC), 2020 U.S. Dist. LEXIS 113251, at *21 (S.D.N.Y. June 26,

2020) (reducing Naydenskiy's hourly rate to $200.00 after finding his requested hourly rate of

$350.00 to be excessive); *Sanchez v. Jyp Foods Inc.*, No. 16cv4472 (JLC), 2018 WL 4502008, at

*16 (S.D.N.Y. Sept. 20, 2018) (reducing Naydenskiy's hourly rate from $350.00 to $200.00).  A

reduction in this case would particularly be warranted as, based on the submitted Attorney Time

Records, it appears that Naydenskiy was the only attorney who looked over Plaintiffs' inquest

submissions, after the papers were apparently prepared by one or more paralegals.  (*See* Attorney

Time Records (entries for Feb. 15, 2019 through Mar. 4, 2019).)  As discussed above, there were

fatal insufficiencies in the submissions made on behalf of the majority of the named Plaintiffs,

and, even as to the rest, counsel's submissions often lacked clarity and showed numerous errors.

Under these circumstances, and in keeping with prior authority from this District, I recommend

that the Court reduce Naydenskiy's requested rate to $200.00 per hour.

Finally, Plaintiffs seek recovery at the hourly rate of $150 for time spent by one or more unnamed paralegals who worked on this case.  (*See* Faillace Decl. ¶ 15(viii) (explaining, with respect to the submitted Attorney Time Records, that "PL stands for Paralegal work at $150 per hour").)[21]  In his Declaration, however, Faillace provided absolutely *no* information regarding the level of experience of the paralegal or paralegals who worked on the matter.  For this reason, I recommend that the requested paralegal rate be reduced to $100 per hour, as more typical for paralegals working on wage cases in this District.  *See, e.g.*, *Cruz v. JJ's Asian Fusion Inc.,* No. 20 CV 5120 (MKB) (RML), 2022 WL 687097, at *10 (E.D.N.Y. Jan. 11, 2022) (recommending that the paralegal's rate at the Faillace Firm be reduced to $100 per hour in wage-and-hour case), *report and recommendation adopted,* 2022 WL 577954 (Feb. 25, 2022); *Guo v. Tommy's Sushi, Inc.*, No. 14cv3964 (PAE), 2016 WL 452319, at *11, *15 (S.D.N.Y. Feb. 5, 2016) (reducing requested paralegal rate from $150.00 per hour to $100.00 per hour in an FLSA and NYLL case).

### 2. <u>Reasonable Hours</u>

In support of Plaintiffs' request for attorneys' fees, the Faillace Firm has provided the Court with a copy of its time records, which appear to have been maintained contemporaneously during the course of the litigation, and which show the hours that counsel and any paralegal(s) spent working on the matter.  (*See* Attorney Time Records.)  The entries all appear, on their face, to describe reasonable tasks that were performed within a reasonable amount of time – in fact, the time recorded as having been spent on preparing the default motion/inquest submissions

---

[21] This Court notes that, in the Attorney Time Records, there is one entry listed for February 28, 2019, in which a timekeeper identified as "PL" (*i.e.*, as a paralegal) purportedly spent two hours on a task for which the total amount billed was $590.00.  This total amount suggests that the hourly rate for this paralegal was $295.00, and, in light of Faillace's Declaration, this Court assumes that this entry reflects a billing error.

seems to have been far *less* than what might have been expected to prepare quality papers.  The time entries are also not block-billed or otherwise impermissibly vague, and they do not reflect duplicative billing.  For these reasons, I do not recommend reducing the presented number of hours for which the fee recovery is sought.

### 3.   **Lodestar Calculation**

Using the reasonable rates and hours described above would result in the following lodestar calculation:

| Attorney | Hourly Rate | Hours Billed | Total |
|---|---|---|---|
| Faillace | $450.00/hour | 2.70 | $1,215.00 |
| Naydenskiy | $200.00/hour | 1.40 | $490.00 |
| Paralegal(s) | $100.00/hour | 3.70 | $455.00 |
| | | | **Lodestar:  $2,160.00** |

This Court finds no exceptional circumstances here that would warrant deviation from the lodestar, *see Perdue v. Kenny A. ex rel. Wynn*, 559 U.S. 542, 552 (2010), and therefore recommends that Plaintiffs be awarded attorneys' fees in the amount of **$2,160.00**.

### 4.   **Costs**

Plaintiffs additionally seek litigation costs in the amount of $475.00, including a $400.00 filing fee and a $75.00 process-server fee.  (*See* Attorney Time Records.)  While this Court takes judicial notice of the filing fee and therefore finds it to be compensable, *see Guo*, 2016 WL 452319 at, *7, this Court does not recommend that the claimed process-server fee be awarded.  Apart from its itemization of this cost on its billing record, the Faillace Firm failed to submit any underlying documentation supporting the claimed cost.  Plaintiffs bear the burden of demonstrating that the litigation costs sought were reasonably incurred and are properly recoverable from the defaulting Defendants, and in the absence of supporting documentation concerning the requested process-server fee, Plaintiffs have not met their burden with respect to that cost.  *See Pastor*, 2017 WL 5625556, at *9 (declining to award process-server fees where

the plaintiff had failed to submit underlying documentation from its counsel (the Faillace Firm) to support that the fees were incurred).  I therefore recommend that only **$400.00** in costs be awarded.

## **CONCLUSION**

For the foregoing reasons, I respectfully recommend that upon their default, Defendants 2898 Bagel and Sela be held jointly and severally liable for:

1. Damages to Cazares in the amount of $139,874.26 representing:

   a. $5,946.00 in unpaid minimum wages;

   b. $52,762.08 in unpaid overtime compensation;

   c. $6,229.05 in unpaid spread-of-hours compensation;

   d. $64,937.13 in liquidated damages; and

   e. $10,000.00 in statutory damages under the WTPA;

   with prejudgment interest in the amount of:

   a. $22,141.48 up to March 4, 2019 (the date that Plaintiffs filed their damages submissions); and

   b. additional prejudgment interest at the rate of nine percent per annum to be calculated by the Clerk of Court from March 4, 2019 to the date of entry of final judgment;

2. Damages to Delacruz in the amount of $51,663.30, representing:

   a. $2,867.40 in unpaid minimum wages;

   b. $17,964.25 in unpaid overtime compensation;

   c. $20,831.65 in liquidated damages; and

   d. $10,000.00 in statutory damages under the WTPA;

with prejudgment interest in the amount of:

    a.    $7,008.66 up to March 4, 2019 (the date that Plaintiffs filed their damages submissions); and

    b.    additional prejudgment interest at the rate of nine percent per annum to be calculated by the Clerk of Court from March 4, 2019 to the date of entry of final judgment;

3.    Damages to Romano in the amount of $193,773.10, representing:

    a.    $91,886.55 in unpaid overtime compensation;

    b.    $91,866.55 in liquidated damages; and

    c.    $10,000.00 in statutory damages under the WTPA;

with prejudgment interest in the amount of:

    a.    $30,557.58 up to March 4, 2019 (the date that Plaintiffs filed their damages submissions); and

    b.    additional prejudgment interest at the rate of nine percent per annum to be calculated by the Clerk of Court from March 4, 2019 to the date of entry of final judgment;

4.    Damages to Angel in the amount of $14,485.00, representing:

    a.    $2,067.00 in unpaid base wages;

    b.    $175.50 in unpaid overtime compensation;

    c.    $2,242.50 in liquidated damages; and

    d.    $10,000.00 in statutory damages under the WTPA;

with prejudgment interest in the amount of:

    a.    $254.47 up to March 4, 2019 (the date that Plaintiffs filed their damages submissions); and

        b.        additional prejudgment interest at the rate of nine percent per annum to be calculated by the Clerk of Court from March 4, 2019 to the date of entry of final judgment;

5.        Damages to Robles in the amount of $10,780.00, representing:

        a.        $390.00 in unpaid wages;

        b.        $390.00 in liquidated damages; and

        c.        $10,000.00 in statutory damages under the WTPA;

with prejudgment interest in the amount of:

        a.        $25.48 up to March 4, 2019 (the date that Plaintiffs filed their damages submissions); and

        b.        additional prejudgment interest at the rate of nine percent per annum to be calculated by the Clerk of Court from March 4, 2019 to the date of entry of final judgment; and

6.        Attorneys' fees in the amount of $2,160.00, and costs in the amount of $400.00.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6 (allowing three (3) additional days for service by mail). Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Alison J. Nathan, U.S.D.J., United States Courthouse, 40 Foley Square, Room 2102, New York, New York, 10007, if required by her Individual Practices. Any requests for an extension of time for filing objections must be directed to Judge Nathan. FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension*

*Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298, 300 (2d

Cir. 1992); *Wesolek v. Canadair Ltd*., 838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v. Manson*, 714

F.2d 234, 237-38 (2d Cir. 1983).

Plaintiffs are directed to serve a copy of this Report and Recommendation on

Defendants' counsel by means reasonably calculated to reach them, and to file proof of such

service on the Docket of this action.

Dated:  New York, New York
      April 7, 2022

                    Respectfully submitted,

                    DEBRA FREEMAN
                    United States Magistrate Judge

Copies to:

Plaintiff's counsel (via ECF)